**UNITED STATES of America,**

v.

**John DOE.**

**In the Matter of Grand Jury Proceeding: Application of Daniel ELLSBERG for Protective Order.**

**No. 72–1021.**

United States Court of Appeals, First Circuit.

Heard Jan. 18, 1972 on Motion for Stay.

Heard Jan. 21, 1972 on Motion for Stay and Motion to Dismiss.

Decided Feb. 11, 1972.

Aldrich, Chief Judge, did not participate, but concurred in result and filed opinion.

See, also, 1 Cir., 446 F.2d 954.

Charles R. Nesson, Cambridge, Mass., for appellant upon application for stay.

Richard J. Barry, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., David R. Nissen and Warren P. Reese, Asst. U. S. Attys., were on motion to dismiss and memorandum in opposition to stay, for appellee.

Before McENTEE and COFFIN, Circuit Judges.*

COFFIN, Circuit Judge.

Daniel Ellsberg, a defendant in a pending criminal prosecution initiated by an indictment in the Central District of California, seeks a protective order barring a grand jury sitting in the District of Massachusetts (Boston) from gathering evidence which would be relevant to his trial in California. The district court denied the motion, basing its decision on the prosecution's representation "that its purpose in calling witnesses [in Boston] is not to obtain testimony or other evidence tending to prove the charge or charges [in California] but to determine whether any offense or offenses against the United States may have been committed within the District of Massachusetts." Movant now asks for a stay of the denial pending appeal.

The California indictment charges Ellsberg with unlawful possession of classified government documents (18 U.S.C. § 793(e)) and with unlawful conversion of such documents to his own use (18 U.S.C. § 641). In addition, Ellsberg, Anthony Russo and "others unknown" are charged with entering into a conspiracy with two other named but unindicted co-conspirators "to defraud the United States . . . [by] defeating its lawful governmental function of controlling the dissemination of classified Government studies", more specifically, by receiving the Pentagon Papers, copying them, and communicating them to unauthorized persons. Trial is scheduled to commence in from six to ten weeks.

The protective order which movant seeks would bar the prosecution from asking any witness subpoenaed to testify before the Boston grand jury questions bearing on the charge that he, Ellsberg, had conspired to communicate the Pentagon Papers to unauthorized persons, as broadly charged in the California indictment. The request is based on movant's assertion that use of the powerful and essentially unreviewable grand jury process in Boston to aid preparation of the government's case in California would subvert the protections accorded a defendant by the Federal Rules of Criminal Procedure and would consequently jeopardize his right to a fair trial on the pending charges. Although movant's argument, so put, contains due process elements, he appeals principally for an exercise of this court's general supervisory powers.

Although the attorneys for the government—the same three being responsible for both the presentation before the Boston grand jury and the California trial jury—have stated that the principal purpose of the Boston proceedings is to ascertain whether offenses against the United States, other than those already charged in the California indictment, have been committed and have expressly disavowed any intent to utilize the Boston grand jury "to extract testimony for use . . . in Los Angeles", they candidly admit that the investigation here may turn up some evidence relevant to the California proceedings. As long as such evidence remains a necessary—though usable—byproduct of the Boston investigation and is not allowed to disturb the focus of that investigation, however, the government contends that such evidence is properly usable in the California trial. It also believes that the Boston grand jury is not foreclosed from inquiring into events in Boston which "suggest other aspects" of the conspiracy alleged in the California indictment or "separate conspiracies in-

---

* See Memorandum of Aldrich, Chief Judge, at the end of the opinion.

volving Daniel Ellsberg as a central figure".

As to the present appeal, the government challenges on jurisdictional grounds our power to issue a stay, arguing that the district court's denial of the motion for a protective order was not a final determination of movant's rights under 28 U.S.C. § 1291, citing Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); and In re Grand Jury Investigation of Violations (General Motors), 318 F.2d 533 (2d Cir.), cert. dismissed, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963). In the usual case in which the grand jury investigation and any subsequent trial are likely to be confined to a single jurisdiction, we would be inclined to agree with the government's contention. Our problem here is especially vexing, however, because we are not so sure that any other forum exists for a final testing or full review of movant's claim. Nor, the government admits, is it, suggesting only that all would not be lost were we to decline jurisdiction now since the Massachusetts District Court could, if necessary, exercise its continuing supervisory power and would retain its power to discipline the individual government attorneys in the event a breach of trust were later brought to our attention.

In several significant respects, the present case differs from those cited to us by the government. *Cobbledick* dealt with a grand jury witness who could assure himself of a final decision by provoking a contempt citation. *Di Bella* concerned a pre-indictment movant for suppression of evidence who could have his day in court by moving to suppress at his own criminal trial. *In re Grand Jury Investigation of Violations* involved a factual situation much closer to the present case. But although the Second Circuit refused to disturb the district court ruling being appealed there it had considerable difficulty pointing out where the party seeking to quash grand jury subpoenas allegedly being used to produce evidence for a criminal prosecution against it, General Motors, could get real protection in the event it would ultimately prove an abuse of the grand jury process. 318 F.2d at 538.[1]

The nature of movant's claim is a large and compendious one. The rule, as accurately stated by Professor Moore, does not differ markedly from the general position staked out by the government: "It is improper to use the grand jury for the purpose of preparing an already pending indictment for trial. But the courts have generally held that where another purpose is predominant, the fact that the government may derive incidental benefit from a grand jury proceeding does not preclude its use." The classic case, In re National Window Glass Workers, 287 F. 219 (N.D.Ohio 1922), dealt with a grand jury subpoenaing the same witnesses and documents as had a prior grand jury which issued an indictment, where the court's compelled conclusion was that the "dominating, if not the only, object" was to prepare for trial of the earlier indictment. *Id.* at 227. In another case, the Supreme Court refused to interfere with government use of a grand jury transcript in the preparation of a civil suit, even though no indictment was returned, in the absence of a finding that the grand jury had been used as a short cut or that criminal procedure had been subverted. United States v. Procter & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). In United States v. Dardi, 330 F.2d 316, 336 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964), the test was thus stated: "It is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial."

---

1. We note also that the construction of *Di Bella* as disapproving Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), loses force in the light of United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), which indicates that *Perlman* is alive and as well as can be expected.

■■ Movant's claim of taint, therefore, would be the expansive one that the Boston grand jury, as a whole, had, as its sole or dominating purpose, preparation for trial of the California criminal prosecution. This claim could be tested only by a comprehensive viewing of the entire Boston grand jury minutes. But Rule 6(e) of the Federal Rules of Criminal Procedure gives movant no right to disclosure, except upon a showing of grounds for dismissal of the indictment. Moreover, the 1970 amendments to the Jencks Act, 18 U.S.C. § 3500, make clear that a defendant has no right to compel pre-trial disclosure of grand jury minutes. 1970 U.S.Code Cong. and Admin.News, at p. 4017. And, we cannot envisage the California District Court, even in camera, reviewing months of testimony. Accordingly, either on the principle of Cohen v. Beneficial Ind. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), or Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), we are inclined to feel that the denial of the motion for a protective order under the circumstances has such finality as to confer appellate jurisdiction.[2]

But the same problem of immensity of claim that inclines us to take appellate jurisdiction also poses the most serious problem in structuring an intervention in such a way as to respect the independent role of the grand jury while at the same time giving absolute protection to movant. We cannot, for example, subscribe to the protective order requested and attempt to bar the grand jury from inquiring of a witness whether movant communicated the Pentagon Papers to an unauthorized person. In the first place, such a transaction could be a separate crime committed in Massachusetts, implicating additional prospective defendants, as well as being germane to the California trial. In the second place, we give credence to the government attorneys when they say that they do not know in advance what testimony will be forthcoming from a witness. And, finally, we recognize the futility both of barring questions which might occur to the jurors themselves and of policing the questions · which could be put. This case presents neither the threat to a witness's constitutional rights nor the feasibility of remedy present in In re September 1971 Grand Jury (Mara v. United States), 454 F.2d 580 (7th Cir. 1971), where the court required an affidavit in open court demonstrating the reasonableness of compelling handwriting exemplars. Nor can we devise any feasible system for the court's exercise of its supervisory powers, such as a review of the questions asked. Such a system, to provide complete assurance to movant, would involve exposing the entire grand jury transcript to movant on the basis of generalized suspicion. *Cf.* United States v. Procter & Gamble Co., *supra*. We are not willing, under the authority of our supervisory powers, to direct either kind of intervention in grand jury procedures on the facts of the present case.

■ We recognize, in short, that grand jury proceedings cannot be policed in any detail. It is a price we pay for grand jury independence that sometimes people are indicted on the basis of evidence tainted in part by hearsay, Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), or of illegally obtained evidence, Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L. Ed.2d 321 (1958). Nor is a grand jury narrowly confined in its objectives, Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). And, even when a grand jury produces evidence but does not return an

**2.** Although both parties have briefly argued the issue of the standing of movant to seek a protective order, we have, in the absence of substantial authority on point, subsumed this issue under that of appealability. It seems to us that if movant faces possible action to his prejudice in Massachusetts, and has no sure opportunity of full review elsewhere, he must have standing to raise the issue here.

indictment, that is insufficient to embargo its fruits. United States v. Procter & Gamble, *supra.*

■■ On the other hand, we are sensitive to the possibilities of abuse of the grand jury process which are inherent in the present situation. As Moore has observed, "The government has at its disposal one of the most effective discovery mechanisms yet devised—the grand jury. This body may call witnesses under compulsory process and examine them in secret under oath, unhampered by the rules of evidence or an adversary counsel's cross-examination, or in the case of a 'prospective defendant' by Fifth Amendment immunity. [citations omitted]." 8 Moore's Federal Practice ¶16.08[1], at 16–100 (2d ed. 1970).

The problem is akin to that of using the wide-ranging discovery procedure available under the Federal Rules of Civil Procedure to gather evidence for a criminal prosecution. This practice has been the subject of critical comment, *see, e. g.,* Note, Stay of Discovery in Civil Court to Protect Proceedings in Concurrent Criminal Action—The Pattern of Remedies, 66 Mich.L.Rev. 738 (1968), but is not easily forbidden. United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1969). The Court in *Kordel,* however, specifically noted that the issue there faced was not one in which the government brought a civil action "solely to obtain evidence for its criminal prosecution", *id.* at 11–12, 90 S.Ct. at 769. Here we confront not only a broadly-phrased indictment in California, and a grand jury inquiry on the home ground of the movant, but an identity of prosecutors in the two proceedings. The difficulties they face in

not confusing their roles, with the consequent potential for distortion of the role of the grand jury, cannot be dismissed as unreal.

We conclude that there is a modest though necessarily incomplete, protection which we can give movant, consistent with our respect for the integrity of the Boston grand jury. While, in the absence of a compelling showing of the probability of abuse, a total review, either here or there, of that jury's proceedings before movant's trial in California is not warranted, United States v. Procter & Gamble, *supra,* 356 U.S. at 683, 78 S.Ct. 983, the record will be available here in the event that disciplinary action against the prosecutors should ever be called for. More important from the movant's point of view is the possibility of the California trial court's own scrutiny, pre-trial, of the testimony of such witnesses before the Boston grand jury as are expected to be called as witnesses at the California trial.

It is of course clear that the recent amendments to the Jencks Act, the restrictions surrounding the disclosure of grand jury proceedings in Rule 6(e), F.R.Crim.P., and even the proposed amendment to Rule 16(a) (3)[3] give a defendant no right in the ordinary course to grand jury minutes. But Rule 6(e) itself authorizes a court "preliminarily to or in connection with a judicial proceeding" to direct disclosure. The Supreme Court in Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966), referring to this power, quoted the statement in United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed.

---

3. "Except as provided in rule 6 and subdivision (a) (1) (i) of this rule, these rules do not relate to discovery or inspection of recorded proceedings of a grand jury." Preliminary Draft of Proposed Amendments to Rules of Criminal Procedure for the United States District Courts, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, January, 1970, 48 F.R.D. 547, 590 (1970). A con-

trary recommendation is contained in ABA Standards, Discovery and Procedure Before Trial § 2.1(a) (iii) (Approved Draft, 1970) : "[T]he prosecuting attorney shall disclose to defense counsel . . . . . : those portions of grand jury minutes containing testimony of the accused and relevant testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial; ". See discussion at 64–66.

1129 (1940), "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *See also* Gibson v. United States, 131 U.S.App.D.C. 143, 403 F.2d 166, 167 (1968), and cases cited therein.

Were transcripts of the Boston grand jury testimony available to the California trial court, it would be possible for such pre-trial scrutiny to be made, in camera. *Cf.* Rule 16(e), F.R.Crim.P.; 18 U.S.C. § 3500(c); ABA Standards, Discovery and Procedure Before Trial § 4.6, at 104–06 (Approved Draft 1970); Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969) (per curiam). In the unlikely event that scrutiny of a number of witnesses' transcripts led the court to suspect that the Boston grand jury might in fact have been used dominantly to prepare for the California trial, it could conduct a more comprehensive review. The court might at some point conclude that the ends of justice would be served by such full disclosure. Short of this, the court could proscribe the calling of a witness whose testimony in Boston appeared to have been elicited chiefly for its contribution to the trial in California. This partial proscription would have been the result in United States v. Dardi, 330 F.2d 316 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed. 2d 50 (1964), had the trial court concluded that a witness had been called before a grand jury largely to gather evidence for an ongoing trial. To be sure, such an inquiry may not uncover fruits stemming from Boston disclosures, but, as the Second Circuit observed in In re Grand Jury Investigation of Violations, *supra*, 318 F.2d at 537, a motion for suppression of evidence may seek to encompass such fruits, "which is often quite as difficult of ascertainment as the benefits of the Government's allegedly improper discovery would be here."

In saying what we have said, we most particularly do not wish to be understood as asserting any competence to advise another federal court about the conduct of its business. All we seek is to assure the availability of testimony to the California court if it should see fit to make use of it. We do have and therefore exercise our power here to require the prosecutors who are presenting matters to the Boston grand jury to make available to the District Court of Central California the transcripts of testimony of each witness, if any, whom the government intends to call at trial in California, as seasonably as feasible. This will allow that court the opportunity, if it wishes to avail itself of it, to survey the proposed testimony to judge whether, at least as to the putative witnesses, the Boston grand jury was decoyed into serving primarily as a discovery device for the government's trial preparation.

Subject to this requirement, we deny the motion for stay.

ALDRICH, Chief Judge.

In accordance with customary practice this motion to stay was originally heard orally before a single judge, in this instance myself. Thereafter movant sought a hearing before the full court. Because I was about to absent myself from the Circuit this request was assented to and I did not participate. Accordingly, I do not participate in the opinion. I wish, however, to note my concurrence in the result, and my disturbance with the suggestion, inherent in movant's position, that additional defendants could not be sought in the Massachusetts district unless the case against him had been completed. I do not blame defendants for seeking whatever may be available to them, but judicial proceedings of late seem to be concerned with refusals to testify and claims that others should not testify or, it would seem, not be indicted, on the one hand, and, on the other, that indictments should be promptly brought and speedily disposed of. If I may mix metaphors, defendants seek to break up the play before it has started, and then claim the government was offside.