UNITED STATES of America, Appellee,

v.

Michael C. FISHER, Appellant.

No. 361, Docket 71-1830.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1972.

Decided Feb. 14, 1972.

Jesse Berman, New York City (Stanhope Lacy, Jr., Jamaica, N. Y., on the brief), for appellant.

Raymond J. Dearie, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty. for Eastern District of New York, David G. Trager and Thomas P. Puccio, Asst. U. S. Attys., on the brief), for appellee.

Before SMITH, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Michael C. Fisher appeals from a judgment of conviction for armed bank robbery in violation of 18 U.S. C. § 2113(a), (d) and for conspiracy to commit the robbery, 18 U.S.C. § 371. He was tried before Judge Orrin G. Judd and a jury in the United States

District Court for the Eastern District of New York, together with four co-defendants. The jury acquitted two co-defendants, failed to reach a verdict on the third, and found the fourth, Gary Bush, guilty along with Fisher on the substantive counts and on the conspiracy count. Fisher and Bush were each sentenced to 25 years imprisonment and both appealed, although Bush's appeal has been severed. We affirm appellant Fisher's conviction.

The evidence introduced at trial—if properly admitted—overwhelmingly established that appellant was one of the six men who, on December 30, 1970, robbed a Brooklyn branch of the Manufacturers Hanover Trust Company. These men, armed with a small arsenal of dangerous weapons, stole over $15,000 and fled in two getaway cars. Appellant contends, however, that for various reasons, some of the evidence was improperly admitted and that his conviction should be reversed. We will consider his contentions in turn.

On the evening of January 4, 1971, five days after the robbery, two New York City patrolmen stopped appellant and a co-defendant while they were driving one of the getaway cars. The car was initially stopped because it had defective tail lights, but a subsequent radio check revealed that the car had been stolen. At the time of their arrest, appellant and the co-defendant were in possession of $2,538, two federal reserve bank straps (used to fasten large bundles of money), and a box of .357 magnum ammunition, as well as a small quantity of narcotics. Appellant claims that since the money thus seized was not demonstrated to have been stolen, it should not have been admitted into evidence. Also, since appellant's prior economic status was not established, it is argued that the Government could not properly rely on a theory of sudden acquisition of wealth. See United States v. Trudo, 449 F.2d 649, 651 (2d Cir. 1971); United States v. Ravich, 421 F.

2d 1196, 1204 (2d Cir.), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). Both these arguments, however, overlook certain simple facts. First $2,-500 is a large sum of cash by almost any standard. Second, although the money did not contain any of the bank's recorded "bait money," it was seized in one of the getaway cars only five days after the robbery. Third, bait money and large sums of cash had been turning up all around appellant. For example, the $1,-000 cash bail posted by appellant's mother and girlfriend included some of the marked bills. In such circumstances, it is understatement to say that the sum found on appellant and his co-defendant was sufficiently relevant to be admissible. Evidence need not prove the Government's case before it can be introduced. People v. Adamson, 27 C.2d 478, 165 P.2d 3, 6–7 (Cal.1946) (Traynor, J.); 1 Wigmore, Evidence §§ 28, 29 (3d ed. 1940). Similarly, the bank straps may not be conclusive on the issue of complicity in this particular robbery, but they surely are relevant to the issue.

Appellant also objects to the introduction of other real evidence: (1) $5,261 in cash, including some bait money, found in the house of co-defendant Bush's father-in-law during a search on the evening of January 5, 1971; (2) a shotgun found in the home of Bush's parents; and (3) certain weapons that had been left in one of the getaway cars during the robbery. The first two items were admitted only against defendant Bush. Nonetheless, appellant claims that the "cumulative prejudicial display of guns and money . . . [which] bore little or no relation to the proof" unfairly affected all of the defendants.[1] This claim is without merit. Bush had access to the houses of both his parents and his father-in-law. That he did not have exclusive control over those premises may certainly affect the probative value of the evidence—but that factor alone does not dictate exclusion. Similarly, possession of weapons at the scene of the

---

1. Appellant's Brief at 30.

crime and subsequent to the crime was relevant at least to show preparation for the crime and to corroborate the testimony of a key government witness.[2] See United States v. Ravich, *supra*, 421 F.2d at 1204. To be sure, all of this money and hardware was potentially unfairly prejudicial. But if relevant, the task of weighing possible unfair prejudice against probative value rests with the sound discretion of the trial judge, and "his determination will rarely be disturbed on appeal." United States v. Ravich, *supra*, 421 F.2d at 1205. The trial record amply demonstrates that Judge Judd considered the dangers of admitting this evidence, and, in light of the record, we are not persuaded that his decisions should be reversed.

■ On the morning following appellant's arrest by the City patrolmen, he was arraigned in Brooklyn Criminal Court on charges of grand larceny and possession of narcotics and was then held in the Brooklyn House of Detention. Shortly before midnight on January 5, 1971, appellant was there "re-arrested" by the FBI, taken to an FBI office and interrogated. During the interrogation, appellant admitted participating in the robbery by carrying a shotgun into the bank to provide "cover" for the other defendants. Appellant moved to suppress his admission on the grounds of involuntariness, but after a lengthy pretrial hearing Judge Judd denied the motion and the admission was introduced at trial.

Appellant has conceded that shortly after arriving at the FBI office he was informed of his *Miranda* rights and that he signed a waiver. In addition, he has abandoned his allegations made in the district court of brutality and threatened brutality, as well as his claim that he was not permitted to call his

attorney.[3] In continuing to press his claim of involuntariness, however, appellant emphasizes that at the time his interrogation began he had already been in custody (possibly without food) for over 24 hours, and that the continuous interrogation by federal agents lasted at least from approximately 12:30 a.m. to 6:00 a.m. on January 6, 1971, if not longer. It appears, however, that the interrogation was interrupted while appellant was fingerprinted, photographed and given something to eat. Moreover, the testimony apparently credited indicates that appellant was questioned about the Manufacturers Hanover bank robbery toward the beginning of the interrogation, cf. United States ex rel. Sims v. LaVallee, 418 F.2d 437 (2d Cir. 1969) (*per curiam*). Indeed, part of the reason the interrogation seems to have lasted as long as it did was appellant's willingness to discuss the numerous other bank robberies with which he was familiar. In short, "in light of the totality of the circumstances" we cannot say the district court was wrong in concluding that appellant's will had not been overborne. Procunier v. Atchley, 400 U.S. 446, 453, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); cf. United States ex rel. Burns v. LaVallee, 436 F.2d 1352 (2d Cir. 1970), cert. denied, 402 U.S. 1012, 91 S. Ct. 2190, 29 L.Ed.2d 436 (1971).

■■ At trial, appellant objected to the entire testimony of co-conspirator Ronald Singleton. The ground for the objection, renewed on appeal, is that the Government "froze" Singleton's testimony by improperly having him appear before a grand jury after the indictment in this case had been filed and the investigation of this and other related bank robberies had been terminated. See United States v. Pack, 150 F.Supp. 262, 264 (D.Del.1957). The Assistant United

---

2. Co-conspirator Ronald Singleton testified that some of the weapons in the possession of the conspirators were "left in the car." Subsequent to the trial, Singleton pleaded guilty and was sentenced to eight years imprisonment.

3. Appellant does continue to maintain that during the interrogation the officers denied

his request to speak to his mother. However, in view of the trial court's finding that appellant's testimony as to the alleged requests generally was "incredible" and "unworthy of belief," we need not consider this complex issue. See Note, Right to Non-Legal Counsel During Police Interrogation, 70 Colum.L.Rev. 757 (1970).

States Attorney who argued this appeal [4] candidly admitted that this use of the grand jury was improper, but he indicated that "freezing" testimony by some means is commonplace. We agree. The Government could easily have obtained an affidavit from Singleton containing all the information that was elicited before the grand jury. It is true that the Government's conduct cannot be justified, and should not be repeated; the grand jury is not meant to be the private tool of a prosecutor. Nevertheless, we are not persuaded that appellant was prejudiced here.

Appellant claims that a mistrial should have been granted when the Government asked certain questions relating to his character and to his possible involvement in other bank robberies. Also, appellant objects to a portion of the trial court's charge on voluntariness of admissions. We have considered these arguments and find them without merit.

Judgment affirmed.

---

4. Not the Assistant in charge of the case in the district court.