## Commonwealth v. Lang

*J. Curtis Joyner* and *Joseph W. Carroll, assistant district attorneys,* for the commonwealth.

*John J. Duffy* and *Joseph P. Green Jr.,* for defendant.

GAWTHROP, *J.,* April 11, 1986 — I have before me a motion on behalf of defendant, Mr. Lang, for the disclosure of testimony before the Chester County investigating grand jury. For the reasons stated, I grant the motion in part and deny it in part.

Essentially, the motion avers that various persons who will be called to testify against defendant at trial have testified before the grand jury concerning violations of the Controlled Substance, Drug Device and Cosmetics Act, and that since defendant is charged with violation of that same act, the act "is the subject matter of the charges pending against him" and, thus, any drug testimony is discoverable.

In addition, defendant argues that certain of the testimony is exculpatory, and is subject to mandatory disclosure. Pa.R.Crim.P. 305 B(1)(a). *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The principal thrust of this argument is that the testimony was taken before the grand jury

after the present criminal charges were lodged against defendant, and that this was improper, an abuse of prosecutorial authority and, in particular, of the grand jury process. The defense further avers that the entire grand jury transcript may also be exculpatory in that it might disclose witnesses who would not be called at trial, yet who nevertheless might have given evidence tending to exculpate defendant.

Finally, the defense asks us for the grand jury testimony to assist it in cross-examining the witnesses and asks that the transcripts of prospective trial witnesses be tendered for this purpose immediately.

## DISCUSSION

*Transcription of Testimony*

First, the defense asks that the testimony of the prospective witnesses against him at trial be transcribed, pursuant to Pa.R.Crim.P. 260. This request I grant, and the transcription has already taken place.

*The "Subject Matter of the Charges Against the Defendant"*

The defense next asks that the court, after review of all the grand jury transcripts, order disclosure of all transcribed testimony which in any way involves a violation of the Controlled Substance, Drug Device, and Cosmetic Act, this coming from any witnesses against any potential defendant, the theory for this being that since "the subject matter" of defendant's prosecution is an alleged drug violation of CSDDCA — whether the testimony pertains to this defendant or not — concerns "the subject matter" of defendant's charge and therefore, under Pa.R.Crim.P. 263(b)(2), is required to be turned over to the defense. That provision reads:

"When a witness in a criminal case has testified previously before an investigating grand jury concerning the subject matter of the charges against defendant, upon application of such defendant, the court shall order that defendant be furnished with a copy of the transcript of such testimony; however, such testimony may be made available only after the direct testimony of that witness at trial."

The inquiry thus turns to the question of whether the language "the subject matter of the charges against defendant" means drugs generally, or this particular drug prosecution brought against this particular defendant. I respectfully reject defendant's position, that the former, vastly broad definition applies, and restrict it to drugs as they concern this particular defendant in this particular prosecution. In construing the Pennsylvania Rules of Criminal Procedure, I am enjoined by rule 2 thereof to be mindful that they are intended to provide for the just determination of every criminal proceeding, and that the rules "shall be construed to secure simplicity of procedure, fairness of administration and the elimination of unjustifiable expense and delay as nearly as may be in consonance with the Rules of Statutory Construction." Pa.R.Crim.P.2.

Turning to the Statutory Construction Act, 1 Pa.C.S. §1921 et seq., I observe that section 1921(a) iterates the familiar language that every statute shall be construed if possible to give effect to all its provisions. Section 1921(c)(1) and (b) remind one that when the words of the statute are not explicit, seeking to ascertain the Legislature's intent — assuming arguendo that "subject matter" in this context is not explicit — one should consider the object to be attained by the provision and the consequences of a particular interpretation. Nor may one indulge in construction that achieves a result that is

absurd, impossible of execution, or unreasonable. 1 Pa.C.S. §1922(1).

Viewing the rule with these principles in mind, I conclude that for me to construe the term "subject matter of the charges against defendant" so broadly as to encompass all testimony throughout the proceedings of this grand jury (which has been sitting now for nearly a year) which has anything whatsoever to do with drug violations generally, would be potentially[1] to require the disgorging of literally reams of testimony, not a page of which has one whit to do with this particular defendant, except for the coincidence of having its procedural genesis in alleged violations of the same statute. Such a construction would occasion a de facto repealer of the secrecy of the grand jury, mandated by the Legislature. 42 Pa.C.S. §4549(b). That secrecy, contrary to the plaints of the defense, is not established out of some perverse legislative desire to preserve the last vestige of the Star Chamber. Rather, grand jury secrecy has numerous important and proper purposes:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations by protecting them from the importunity and sinister influence of persons suspected and their friends; (3) to prevent subornation of perjury or tampering with witnesses who appear before the grand jury and later appear at the trial; (4) to protect witnesses, so as to encourage them to appear, make complaints, and testify fully; (5) to protect the good names of innocent persons investigated but not indicated."

---

1. Because of the secrecy of the grand jury proceedings, I expressly do not state whether there is in fact such further mention in the transcripts.

*United States v. Smyth,* 104 F. Supp. 283, 303, n. 85 (ND Calif., 1952).

Thus, to grant the defense request would do unacceptable violence to the grand jury concept, while skewing its statutory scheme, to the ultimate achievement of an absurd result. Further, the logistics of making available potentially vast numbers of irrelevant transcripts would be an unnecessary and burdensome expense, both of time and of paper. I thus construe the term "subject matter" in this context so as to require that the district attorney make available to defendant, at the end of the witness' direct examination at trial, the grand jury testimony of that witness. Because of the broad mandate of *Commonwealth v. Hamm,* 474 Pa. 487, 378 A. 2d 1219 (1977), which requires that the entirety of prior statements of commonwealth witnesses be made available to defense counsel themselves, so that they, armed with an advocate's knowledge of the case, can make the requisite searching inquiry into whether there is anything which might be of value to the defense, I shall require the entirety of that trial witness' testimony before the grand jury to be turned over upon the conclusion of direct examination. See also *Commonwealth v. Ritchie,* 509 Pa 357, 502 A. 2d 148, 153-54 (1985).

*The Propriety of the Grand Jury's Having Taken Testimony Concerning this Defendant on These Charges, After Defendant was Charged*

Defense next posits an interesting question, apparently novel to the courts of this commonwealth: does the proposed testimony, taken after criminal charges were formally filed against this defendant, and after his prosecution was proceeding, preclude that testimony's being used at trial and constitute such a violation of the grand jury process that at the very least, the testimony should be suppressed and

the witness's trial subpoena quashed?[2] Defendant has cited a number of cases in the federal context which announce that general principle of law. See *Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985,* 767 F.2d 26 (2nd Cir., 1985); *United States v. Doe, In the Matter of Ellsberg,* 455 F. 2d 1270 (1st Cir., 1972); *United States v. Fisher,* 455 F. 2d 1101 (2nd Cir., 1972); *United States v. Dardi,* 330 F.2d 316, 336 (2nd Cir., 1964) cert. denied 379 U.S. 845 (1964). Upon receiving these authorities, I inquired of counsel as to the reasoning behind the decisions, noting that if they turned upon some phrase within the Federal Rules of Criminal Procedure, they might well not apply in the procedural context of a Pennsylvania court; whereas, if they were bottomed upon some federal case law constitutional principle, the federal case law might well be binding and dispositive. A review of those cases discloses little reason given, beyond the bald conclusional statement of the legal principle asserted. In *Fisher,* for example, the court, while nevertheless affirming the conviction, states:

"At trial, appellant objected to the entire testimony of co-conspirator Ronald Singleton. The ground for the objection, renewed on appeal, is that the government "froze" Singleton's testimony by improperly having him appear before a grand jury after the indictment in this case had been filed and the investigation of this and other related bank robberies had been terminated. See *United States v. Pack,* 150 F.

2. The arrest was made on April 27, 1985, and the preliminary hearing took place on August 9, 1985, defendant thereafter having been bound over to this courthouse. There have been some defense continuances since then, but the case is now ripe for trial. The complained-of testimony was taken on October 15, 1985.

Supp. 262, 264 (D.Del. 1957). The assistant U.S. attorney who argued this appeal candidly admitted that this use of the grand jury was improper, but he indicated that freezing testimony by some means is commonplace. We agree. The government could easily have obtained an affidavit from Singleton containing all the information that was elicited before the grand jury. It is true that the government's conduct cannot be justified, and should not be repeated; the grand jury is not meant to be the private tool of a prosecutor. Nevertheless, we are not persuaded that appellant was prejudiced here." *U.S. v. Fisher,* 445 F.2d at 1104-5.

Besides, the obvious factual distinction, in that at bar there is no suggestion that the investigation of this case had terminated, one observes that the issue in *Fisher* was not genuinely litigated, the assistant U.S. attorney having "candidly admitted that this use of the grand jury was improper." That he acquiesced, however, candidly or otherwise, does not necessarily make it so. Turning to the *Pack* case, the sole decisional authority, upon which the *Fisher* court relies, one immediately observes that, first, it is factually distinguishable as well, dealing with a grand jury in 1957 inquiring into prosecutions evolving from two earlier grand juries in 1952 and 1953. Here of course, the case involves but one, same, grand jury. Beyond that, however, it relies upon but two cases, *United States v. Smyth,* supra, and *In re National Window Glass Workers,* 287 F. 219 (N.D. Ohio, 1922). The first is a splendid scholarly discussion of the history and evolution of the grand jury from the Norman kings of England in 1166 until the Northern District of California in 1952. It almost reads more like a law review article than a judicial opinion. It is also a ringing endorsement of the grand jury and its considerable inquisi-

torial powers. It in no way, most respectfully, stands for the proposition for which the *Pack* court cited it.

The other case cited in *Pack, National Window Glass Workers,* appears to be the decisional fountainhead of this doctrine. Judge Coffin in *U.S. v. Doe,* supra, at 455 F.2d 1273, calls it "[t]he classic case." Close scrutiny of this seminal decision, however, provides interesting revelations. It involved a precedural posture in which the government was proceeding from district to district in which overt acts had been committed in furtherance of a continuing criminal conspiracy, and was continuously and successively investigating the same transactions and indicting the same persons. This continuing investigation required the presence of the same counsel who were trying to prepare the other case for trial.

In prohibiting this course of conduct, the district court concluded that it had the power and discretion to "set a limit to the oppression or injustice that may thus be inflicted." *In re National Window Glass Workers,* 287 F. at 227. 287 F. at 227. But in so holding, the court said that it would undoubtedly decline to interfere with new investigations and new indictments and would not so interfere if there were clearly shown a substantial need for such new investigation, in addition merely to the inconvenience of parties and counsel. "Every precaution which the courts have imposed to protect the secrecy, freedom and independence of grand jury investigations should and ought to be preserved. But here no reason is suggested for the new investigation, except one of little substance." The only claimed justification for the investigation before District Judge Westenhaver, the author of *National Window Glass,* was that the U.S. Attorney wanted to get a new indictment, not for the purpose of the trial, but

only for use in the event the initial prosecution in New York failed for want of jurisdiction. The court understatedly opined: "This claim seems to me to be without much substance."

Finally, Judge Westenhaver turned to the point for which the case has come to be cited:

"It is also shown that the dominating, if not the only, object of the present investigation is to examine witnesses in advance of trial, find out what their testimony is to be, so as to use it in that trial, and to obtain the possession and production of documents for that purpose. This, it seems to me, presents a situation which calls for a limited interference on the part of this court. The present grand jury investigation should be restrained, and the outstanding subpoenas should be vacated and set aside, until the government either has tried the defendants on the New York indictment, or has filed in this court a stipulation in satisfactory form evidencing an intention to try the defendants here first upon any new indictment that may be obtained." 287 F. at 227-28.

It is readily apparent from its phrasing ("it is also shown") that this statement is something of a makeweight addendum to the real reasoning behind his ruling. It is equally apparent that the language is something less than an absolute, prohibitive mandate. First, it only "calls for limited interference on the part of this court," a proscription far less condemning of the practice than the later authorities which cited the case might suggest.[3]

---

3. See for example, *Fisher,* at 1104: ". . . the government's conduct cannot be justified, and should not be repeated. . . ."; *In re Grand Jury Proceedings, Appeal of Johanson,* 632 F.2d 1033, 1042, n. 13 (3rd Cir., 1980): "See e.g., *In National Glass Workers,* 287 F. at 227-8 (finding that dominant purpose of grand jury subpoena was to obtain evidence for trial warranted setting aside subpoenas)."

Second, Judge Westenhaver issued no blanket prohibition; he only delayed further grand jury inquiry in his judicial district either until after the completion of the New York trial, or until the U.S. attorney bound himself to trying defendants first in Ohio. Thus, all the U.S. attorney would have had to do was warrant that he was proceeding in the judicial district in which *Window Glass* was decided, and the grand jury's brakes were off, the stay lifted.

I am therefore constrained to conclude that the case law construing and supposedly following this "classic case" presents a classic example of a quantum-leap extrapolation from a few words written within a unique procedural and factual context; words, which upon close analysis of what the judge actually ordered, express not a holding, but dictum. The case simply does not stand for what its citing cases say it does. This decisional bedrock turns out to be grounded not on granite, but on shale.

This conclusion further obtains when one goes but 16 years before the *Window Glass* decision, to a benchmark grand jury pronouncement of our Supreme Court — *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). There, the court was confronted not with the question of the alleged impropriety of a grand jury's taking testimony concerning a defendant who had already been charged, but rather, with the alleged impropriety of taking such testimony as to a defendant when defendant had *not* been charged. The Supreme Court found no impropriety in permitting such testimony, but the clear, inescapable inference to be drawn from that case is that it was then commonplace to take testimony concerning those already indicted, and that there was nothing wrong in that. Thus, one observes that this brief overview of the decisional evolution in this area of the law provides an interesting

case study of how the concerns of many federal courts have come to be diametrically shifted, so that the pendulum seems now to have swung full stroke over the intervening four score years.

Beyond this discussion of legal precedents, it is unrealistic to suggest that the prosecution's quest for evidence ceases at that magic moment when the defendant is charged. It neither does nor should. The prosecution has not only the right, but the duty to investigate, to ferret out facts. See ABA Standards for Criminal Justice, The Prosecution Function, §§3.1, 3.6, Code of Professional Responsibility, Canons 6 and 7 (A Lawyer Should Represent a Client Competently; A Lawyer Should Represent a Client Zealously Within the Bounds of the Law). Nor may a prosecutor flinch from the pursuit of evidence merely because it may damage the prosecutor's case and aid the accused. See EC 7-13. This right and duty to investigate are not extinguished because charges are filed. The cases are legion where a witness, discovered only late in a trial, comes forth with information that settles, beyond question, or at least beyond reasonable doubt, where lies the truth. This can work both to convict the guilty[4] as well as to acquit the innocent.[5]

Further, I note that the practical effect of a contrary holding, precluding grand jury testimony as to

---

4. See *Commonwealth v. Hamm,* supra. In *Hamm,* a witness interviewed by the prosecution on the penultimate day of trial provided damning testimony, destroying the alibi of a defendant who had lain in wait to murder two police officers.

5. See *Commonwealth v. Thomas Dolhancryk,* 323 May term, 1971; *Commonwealth v. Howard Webb Sr.,* 171 January term, 1973. Both, in the Chester County Common Pleas Court, were murder cases in which evidence, discovered by the prosecution long after each defendant was charged, resulted in dropping prosecution, upon motion of the prosecutor.

a defendant's case after his prosecution has been formally begun, would tend to induce prosecutors into forestalling formal filing of a criminal complaint, not wishing to cut off their right to investigate and uncover evidence through the grand jury. This in turn would tend to attenuate defendant's right to a speedy trial, to have the issue joined with proper alacrity, while his and his witness's memories are yet fresh, and indeed, while his witnesses are yet alive and their whereabouts known, and within range of a subpoena. Our Supreme Courts have been vigilant to protect a defendant's constitutional right to a speedy trial. See *Klopfer v. North Carolina,* 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967); *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972); Pa.R.Crim.P. 1100. And, although that right has generally been held not to arise until arrest, see *United States v. Marion,* 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971), that rule has its exceptions. See generally, *U.S. v. Lovasco,* 431 U.S. 783, 97 S. Ct. 2044 52 L. Ed. 2d 752 (1977); *Ross v. U.S.* 349 F. 2d 210 (D.C. Cir. 1965); *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Grey,* 292 Pa. Super. 460, 437 A.2d 765 (1981).

One can foresee, and many of these cases demonstrate, situations where there is delay, not so great as to fatally taint the trial, but sufficient, nevertheless, to cause defendant some prejudice. That result, albeit irreversible, I prefer to avoid, simply out of fairness to defendant.

"It is unprofessional conduct for a prosecutor intentionally to use procedural devices for delay for which there is no legitimate basis." ABA Standards, The Prosecution Function, §2.9(a) (Prompt Dispo-

sition of Criminal Charges). The federal rule prohibiting post-indictment testimony would seem to provide just such legitimate, lawful basis for there being a drawing-out of the delay before formal charging, until the prosecution is quite sure that there is no testimonial stone yet unturned. I think it preferable that the case proceed apace, without having a tendency to be put on hold until the investigators were absolutely certain that they could at last relinquish their right to requisition important, yet recalcitrant, witnesses before the grand jury.

As for the prosecution's right to subpoena witnesses before the grand jury, I observe that the court in *Fisher,* supra, seems to express regret that the prosecution froze the testimony of the witness for the use of the grand jury. But it is not the freezing that is prohibited, as the court there observes, that could have been done by affidavit. Rather, the real mischief perceived by those protesting the use of grand jury proceedings is not the freezing of the testimony, but simply the use of the subpoena power to bring a witness in. The suggestion is made that for the prosecution to do this at the very least verges on the unethical. But the Canons of Ethics, and notably, DR 7-109(B) and EC 7-27 also state that a lawyer should not cause a person to secrete himself or to leave the jurisdiction of the tribunal for the purpose of making him unavailable as a witness therein. To prevent a third-party witness — i.e., not defendant himself — from testifying before a grand jury would seem to fall within the penumbra of the canonical proscriptions just mentioned, binding upon counsel on both sides of the courtroom.

Questions of standing arise, as well as of prejudice. What genuine prejudice does defendant suffer when somebody comes in and testifies to the truth? Arguably, that the witness testified before the grand

jury gives defendant greater safeguards than if he had had his testimony frozen by speaking into a tape recorder at the station house.[6] The presence of a certified court reporter, the supervision of a judge, and also, most significantly, the presence of disinterested citizens, the distillation of the populace of the judical district, free to ask questions themselves, and perhaps to pry into areas which the prosecutors may have avoided, intentionally or unintentionally, in many ways make the freezing of the statement before a grand jury a procedure less prejudicial to defendant than were that done privately in the back room of a police barracks. In actuality, the "prejudice" to which defendant presumably is referring, is that evidence is discovered. That fact alone, absent, for example, some Fourth, Fifth or Sixth Amendment violation, although de facto prejudicial, is not generally the sort of prejudice cognizable to the courts.

Further, the *Fisher* court's comment that "the grand jury is not meant to be the private tool of a prosecutor" I find somewhat perplexing. It is the tool of a prosecutor, and properly so. And I use the term "tool" no more pejoratively than I would in referring to a sculptor's chisel. Grand juries are not generally considered to be the tool of defense lawyers. The law permits the prosecutor, saddled with the burden of proof, to be armed with this tool to seek the truth, whether that tool be labeled public or private.

In short, I am persuaded neither by precedent nor by policy that I should engraft this apparent federal prohibition onto the criminal rules binding this

6. See *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (use of tape recorded statement admissible as substantive evidence to cross-examine a witness, while yet on direct, who had already recanted that statement before trial).

grand jury in this county. Should there be genuine abuse,[7] I, as presiding judge of that grand jury, shall not hesitate to step in and rein in the prosecution. The court is charged with that duty of supervision, and I do not intend to relax my vigil.

In my initial instructions to the grand jury, delivered in open court, I charged them:

"Now, members of the jury, you and you alone must decide whether the matters of grave public importance before you disclose criminal conduct and, if so, by whom. In the discharge of this responsibility, you must act honestly, conscientiously and without fear or favor. You must avoid mere rumor, suspicion or conjecture, and you must cast out sham and prejudice. But where you find wrongdoing, you must confront it and address it, fearlessly and candidly.

"You have been charged to make inquiry into matters of vital importance to the people of the Chester County and to the people of Pennsylvania. To aid you in your investigations, you have been given powers of the highest order. Your capacity to see that justice is done is enormous. At the same time, if your powers are incorrectly used or abused, great harm can be done, both to individuals and to the community at large.

"It's very true what I'm saying, ladies and gentlemen. The power to subpoena, the power to compel testimony and to compel documents, I'm sure you have some appreciation of that. But as a lawyer, let me tell you that power is absolutely immense. It's one of the greatest powers that our society has. And I cannot impress upon you enough what a potent

---

7. See generally, ABA Standards, The Prosecution Function, §§3.5, 3.6 (Relations with Grand Jury; Quality and Scope of Evidence before Grand Jury).

force you are which can be used for good and can be used for ill. And, I have every confidence that the former will take place.

"The grand juries in this country, when they function properly, protect the interests of the entire community, and protect individual citizens against an invasion of their rights. You should be ever mindful of this responsibility. You should at all times be aware that the law is as zealous in protecting the innocent from injury and the personal trauma of public trial, as it is insistent that the guilty be brought to justice. It lies with you and you alone not only to bring the criminal to justice, but also to ensure that the innocent are screened from false suspicion.

• • •

"In summary, you have the obligation of making careful, deliberate investigation of the facts which come before you, and to report them without bias or prejudice, without malice, fear or favor, without sham, subterfuge or dishonesty, but with justice and impartiality."

I am confident that this grand jury can keep on track as an effective and potent vehicle for tracking down the truth and unraveling hitherto uncrackable crimes, while at the same time not degenerating into a witch-hunt.[8]

---

8. In my initial greeting to the jury panel on May 17, 1985, the day the grand jury was selected, I told them:

"One of the things, however, we shall not be doing here as far as I am concerned — and I think my concerns have some bearing since I will have some control over the testimony and the issuance of subpoenas — we are not on a witch-hunt. We are not here to go around and seek out vendettas against people at all. We are here very seriously for a dispassionate pursuit of the truth and a use of this immense power, but not its abuse."

My holding today is only that there is nothing per se wrong with the district attorney's continuing to use the grand jury to investigate a case, even after the subject of that investigation has been formally charged.

*Whether All Grand Jury Testimony Should be Tendered to the Defense to Permit Them to Search for Possible Favorable Witnesses Whom the Prosecution Would Not Call at Trial.*

Finally, I have been asked to scour the transcripts for any *Brady* material, any negative witnesses whom the commonwealth would not be calling, but could nevertheless provide evidence exculpatory to this defendant. That has been done by the court,[9] and I can and do state that his name appears nowhere else in the transcript other than the witness in question. I do not propose to extend the principle of *Commonwealth v. Hamm,* supra, and *Commonwealth v. Ritchie,* supra, so far as to permit the defense counsel themselves to pore through these volumes. That would be taking the *Hamm-Ritchie* doctrine far too far and would effectively gut the se-

---

9. In so stating, I am not suggesting that the search was legally required and would not wish to imply that this case be precedent therefor. As our Supreme Court stated, in a similar context:

"An in camera inspection of the commonwealth's file is not required unless there is reason to believe that evidence favorable to the defense will be revealed. *Commonwealth v. Gartner,* 475 Pa. 512, 381 A.2d 114 (1977). The commonwealth does not violate the disclosure requirement by failing to disclose evidence that it does not have and of which it is not aware. *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983)." *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811, 822 (1985).

The search was simply made out of an abundance of record-protecting caution.

crecy and effectiveness of the grand jury. As the eminent Judge Learned Hand well stated, in a similar situation:

"Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the 12. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price. Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime." *United States v. Garsson,* 291 F. 646, 649 (DC NY, 1923).

As earlier stated, the prosecution has an affirmative duty to disclose *Brady* material. I am content to repose trust in their honoring that ethical obligation. To do otherwise would require me to repeal the rules limiting plenary discovery in the criminal context. That, I neither have the power nor the inclination to do.

## ORDER

The commonwealth shall provide discovery in accordance with the dictates of this opinion.