**In re Carlos Rosario PANTOJAS,
Defendant-Appellant.**

**No. 80–1317.**

United States Court of Appeals,
First Circuit.

Argued June 3, 1980.

Decided Aug. 14, 1980.

---

Judith Berkan, Hato Rey, P. R., with whom Juan Ramon Acevedo, Hato Rey, P. R., Jose Carreras Rovira, Rio Piedras, P. R., Pedro J. Varela, Hato Rey, P. R., and Ellen P. Chapnick, Washington, D. C., were on brief, for defendant-appellant.

Brian M. Murtagh, Sp. Atty., U. S. Dept. of Justice, Washington, D. C., with whom Charles E. Fitzwilliam, Asst. U. S. Atty., and Raymond L. Acosta, U. S. Atty., Santurce, P. R., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant was found in contempt under 28 U.S.C. § 1826 for refusing to obey an order of the district court that he appear in a lineup requested by a United States Grand Jury. He presently remains in jail because neither the district court nor this court upon preliminary review could find that the appeal was taken for any purpose other than delay. Upon full review of the briefs and records, our first impression has been confirmed on every issue but one. We affirm.

A grand jury in Puerto Rico is investigating a terrorist attack on a United States Navy bus in which two persons were killed. Appellant was first called before the grand jury in March, 1980, and after a few preliminary questions was requested to furnish the grand jury with exemplars of his handwriting, hair and fingerprints and to submit to being photographed. Appellant refused, but after being ordered by the district court to comply with the grand jury's request, he provided the exemplars and the photograph.

At this time, appellant was notified that the grand jury wished him to return at the end of April, at which time he would be directed to appear in a lineup. Appellant appeared at the appointed time but refused to stand in the lineup. The district court immediately ordered appellant to comply with the grand jury directive. Although appellant had numerous motions before the court, he did not answer this order and a warrant for arrest issued the following day. Appellant surrendered himself and was released on bail. A hearing on the government's motion for contempt was heard on May 8, after which the court determined that appellant had not demonstrated just cause for his refusal to appear in the lineup. Appellant was then incarcerated pursuant to the court's order.

Appellant raises three principal issues on appeal. First, he argues that the government did not offer sufficient evidence to the court to prove that he did not actually appear in the lineup. Second, he contends that the court erred in not allowing him to prove that the evidence he was asked to provide related to information made available to the government through an illegal wiretap. Third, appellant claims that he should have not been held in contempt because the prosecutors abused the grand jury process. We address these arguments in the order presented.

■ Appellant's first argument, that the government did not present sufficient evidence to prove that appellant never actually appeared in the lineup, strains credulity. The government submitted an affidavit to support its motion for a show cause order, which stated that appellant had refused to appear in the lineup when requested. At the hearing appellant had the burden to show just cause for his failure to obey the court's order. *In re Bianchi*, 542 F.2d 98, 100–01 (1st Cir. 1976). Appellant then had ample opportunity to avoid contempt by showing that he has subsequently appeared in the lineup. Not only did he fail to allege this fact, but his counsel conceded that he had not obeyed the court's order when he stated in open court that his client "has a right to explain why he did not comply with the court order." Appellant does not impress us with his attempt to engraft onto a summary procedure "meaningless formalities that would only serve to delay the proceedings." *Id.* at 101.

■ The next contention is that under *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), appellant had a right to justify his refusal to appear in the lineup by proving that the government's request was pursuant to information procured through illegal interception of wire communication. *See* 18 U.S.C. § 3504. The district court rejected this contention because it ruled that the question of illegal electronic surveillance could not be raised when a grand jury witness is ordered to provide only nontestimonial evidence such as exemplars or an appearance in a lineup. We need not decide this issue here, however, because, assuming that *Gelbard* applies to grand jury orders to appear in a lineup, we find that the government has met its burden to respond to the witness' allegation by denying in an affidavit the receipt of any information gained through electronic surveillance.[1] The Department of Justice attorney conducting the grand jury investigation submitted an affidavit to the court wherein he stated that, after search of the F.B.I. files and after discussion with relevant officials, he knew of no interception of wire or oral communications by the F.B.I. in this case. He further affirmed that neither he nor the F.B.I. had been furnished the results of any such surveillance by other federal or local law enforcement officials. Such an affidavit satisfies the government's duty to "affirm or deny" the occurrence of electronic surveillance. 18 U.S.C. § 3504. *In re Maury Santiago*, 533 F.2d 727 (1st Cir. 1976); *In re Quinn*, 525 F.2d 222 (1st Cir. 1975).

1. Appellant's contention that the sufficiency of the affidavits is not ripe for review because the district court relied on another ground, is mistaken. The United States, as appellee, may urge in support of the order reasons ignored by the district court. *United States v. American Railway Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924).

Appellant disputes this conclusion; he argues that the affidavit was inadequate because the affiant could not knowingly deny that other federal or local law enforcement officials had subjected him to electronic surveillance. We think appellant's suggestion would place too great a burden on the prosecutor, leading to unnecessary delays in the grand jury process. The evil which section 3504 attempts to prevent is the use by prosecutors of information obtained through unlawful surveillance to solicit further evidence from a witness. The inability of the affiant to deny with certainty that any government instrumentality had subjected the witness to such surveillance seems to us irrelevant when the affiant can knowingly deny that the results of any such surveillance were passed to the investigators conducting the investigation with the grand jury. The affidavit in this case was sufficient to assure the court that the request to the witness to appear in a lineup was not tainted by a prior receipt of unlawful information. *In re Quinn, supra,* generally supports this reading of the statute. There we found an affidavit to be inadequate when the affiant was not in a position to know "the means used by other federal agencies to gather the information, if any, that was furnished to their respective staffs for use in the Quinn investigation." 525 F.2d at 225. Here, the investigators denied that any information supplied to them by other law enforcement agencies was the result of electronic surveillance. While the affidavit did not follow the preferable form described in *Quinn,* namely, denying that *any* investigative information was received from agencies whose offices have not been searched for indications of electronic surveillance, we think that this affidavit satisfied the demands of section 3504, particularly in the context of this case where any surveillance could not affect the content of any questioning of appellant. As we noted in *Quinn,* we shall not "require unrealistically perfect affidavits in connection with a § 3504 response." *Id.*

 Appellant next assails the whole course of the grand jury investigation, alleging that it is being used by the prosecutor to harass the witness and collect evidence for use at trial. The contention seems strained on its face because, while the appellant has not been charged in any indictment, he is clearly a target of this particular grand jury investigation. Appellant first predicates his argument on his position that the grand jury has no legitimate need for his appearance in a lineup because it already possesses photographs of him. This argument can proceed only through a narrow legal channel. Grand juries have the power to direct witnesses to appear in a lineup. *In re Melvin,* 550 F.2d 674 (1st Cir. 1977). Moreover, a witness before a grand jury cannot object to a question by the grand jury on the ground of irrelevancy. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Appellant can be understood only to argue that the lack of any possible connection of the request to any legitimate purpose of the grand jury investigation demonstrates that the process is being abused. *See In re Liberatore,* 574 F.2d 78, 83 (2d Cir. 1978). Appellant has failed to carry his burden to demonstrate why in person observations at a lineup could not be of use to the grand jury in determining if appellant was probably one of the participants in the attack on the bus. The grand jury cannot be limited to acquiring only the minimum evidence necessary to return an indictment. Its task is to return only well founded indictments based upon convincing evidence. *See Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972).

Appellant urges us to adopt the supervisory role adopted by the Third Circuit in *In re Grand Jury Proceedings,* 486 F.2d 85 (1973) (*Schofield I*). That court, incident to its general supervision of federal grand juries, *see In re Grand Jury Proceedings,* 507 F.2d 963 (3rd Cir. 1975) (*Schofield II*), requires the government to make some initial showing that the information sought by the grand jury is relevant and for some proper purpose before a court will order the witness to provide the evidence. We have heretofore postponed consideration of

whether we would adopt a supervisory rule similar to that announced in *Schofield. See In re Lopreato*, 511 F.2d 1150, 1153 (1st Cir. 1975). Although we believe that the procedures mandated by the Third Circuit have much to recommend them, especially as glossed by Chief Judge Seitz in his concurrence in *Schofield I*, 486 F.2d at 94, we decline to impose them on district courts within the circuit at this time. The practical responsibility for controlling grand jury excesses lies with the district court, on which the grand jury must rely for subpoena and contempt procedures. We have seen little to convince us that prosecutors are regularly overreaching or that the district courts have been insensitive to irregularities that may occur. Without some convincing demonstration to us that these procedures are necessary to prevent systematic abuse, we are reluctant to give recalcitrant grand jury witnesses further opportunities for delay. District courts should, however, feel free to require such showings by the government as a means of assuring themselves that grand juries are not overreaching, or simply as a means of removing the issue of sufficiency of nexus from dispute.

We turn finally to appellant's contention that his arrest on April 30 for failure to obey the court's order that he appear in the lineup on April 29 was an abuse of the grand jury process. After a painstaking review of the record pertaining to the arrest, we are forced to agree that this arrest was improper. A brief review of the steps leading to the issuance of the arrest order is necessary to place in perspective our ruling.

On the same day that appellant refused to comply with the directive of the grand jury, the district court ordered him to appear in the lineup. The original court order contained a provision authorizing federal agents "to employ such force as is necessary to compel [appellant] to attend the lineup". Appellant's counsel persuaded the judge to delete the references to the use of force. Appellant then apparently went home without obeying the order.

The next day the prosecutor, a special attorney from the Justice Department, petitioned the court for an arrest order for appellant. In support of the petition the prosecutor stated only that appellant had failed to appear at the lineup and that he had not contacted the prosecutor to explain this nonappearance; the petition requested that the United States Marshal be directed to bring appellant before the court to show cause why he should not be held in contempt. Within the hour the court issued the arrest order, stating as its reasons those suggested by the prosecutor and adding that "it is unlikely that [appellant] will appear before this Court to answer, unless physically brought before the Court." This fear did not materialize; appellant surrendered to the marshal when notified of the order and was subsequently bailed pending the hearing on the contempt motion.

■ Appellant argues that his arrest before a finding of contempt under 28 U.S.C. § 1826 was an abuse of the grand jury process. The government has not defended this act in either of its briefs or at oral argument. Under the circumstances of this case, we think that the district court erred in ordering appellant's arrest for at least two reasons. First, nothing in the record supported the court's finding that it was likely that appellant would not attend the hearing on the motion for contempt. Nothing in the prosecutor's petition or the accompanying affidavit even refers to this possibility. Moreover, appellant had appeared at every grand jury session and court hearing he had been ordered to attend. That appellant had refused to appear in the lineup does not begin to prove that he would not attend the contempt hearing, especially since failure to appear at the contempt hearing might possibly expose him to a default judgment of contempt which would waive his defenses. We note further that section 1826 contemplates only civil contempt; therefore there was no probable cause to believe that appellant's refusal to obey the court's order could be a crime.

Second, the court's reliance on *Appeal of Maguire*, 571 F.2d 675 (1st Cir. 1978), is

misplaced. In that case, we approved a district court order, issued after a hearing, that a witness who had refused to obey a prior court order to appear in a lineup be compelled by reasonable force to stand in the lineup. Our affirmance was predicated on the lack of any plausible alternative to gain compliance with a lawful order; imprisonment for contempt was inadequate because the witness was already serving a lengthy prison term. 571 F.2d at 677. Nothing here curtailed the availability to the court of the normal sanction of imprisonment for contempt. Moreover, the arrest order in this case was not preceded by a hearing to evaluate the reasonableness of the force employed.

To the extent that the arrest is seen as a sanction for failure to obey the court's order, it violates due process. In *In re Bianchi*, 542 F.2d 98, 101 (1st Cir. 1978), we stated: "While a witness must be given a meaningful opportunity to present his defense at a hearing under 28 U.S.C. § 1826, [citation omitted], this summary procedure does not require meaningless formalities that would only serve to delay the proceedings." Here, appellant was sanctioned before being given a chance to present at a contempt hearing his defenses. This opportunity is far from being a formality; it is the essence of due process. *Cf. In re Farrell*, 611 F.2d 923 (1st Cir. 1979) (due process requires witness to receive notice sufficient to contest a contempt petition). Review of the record suggests that the prosecutor believed that appellant was subject to the punishment once he disobeyed the court order.

■ While we are convinced that the arrest was improper, we do not think that the only substantial remedy seemingly available, vacation of the finding of contempt, is indicated in this case. As a general rule, the means by which a defendant is hailed before a court does not affect the power of the court to pass judgment on him. *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). *See also United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). Here,

moreover, the illegality of the arrest does not affect the fact that—as it subsequently developed—appellant refused to appear in the lineup without adequate legal justification. Given these considerations and the likelihood that the prosecutor and the court below misconstrued *Appeal of Maguire, supra,* in good faith, we affirm the judgment of contempt in this case. Nonetheless, we emphasize that "[b]ecause of the seriousness of civil contempt judgments" it is important "that full due process [be] accorded." *In re Farrell, supra,* 611 F.2d at 925. The district court must see to it that appellant's arrest is expunged from his record. Should arrests of this character recur, we have no satisfactory alternative to invoking our supervisory powers to vacate the contempt judgment or to fashion some more appropriate remedy. *See generally United States v. Jacobs,* 547 F.2d 772 (2d Cir. 1977), *cert. denied,* 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978).

Appellant's remaining arguments are meritless. The district court could believe the statement of the prosecutor in court that appellant received target warnings. Any error in subpoenaing appellant without first requesting him to appear before the grand jury was harmless.

*Affirmed.*