**In re GRAND JURY PROCEEDINGS.**

**Appeal of Hilton FERNANDEZ DIAMANTE.**

**In re GRAND JURY PROCEEDINGS.**

**Appeal of Elias Samuel Castro RAMOS.**

Nos. 86–1129, 86–1169.

United States Court of Appeals, First Circuit.

Heard Oct. 10, 1986.
Decided March 25, 1987.

**7.** The trustee has also raised the alternative issue of classifying the transfer under the voidable preference provision of 11 U.S.C. § 547. While the transfer may well qualify as a preference, the record does not contain sufficient facts for this court to find that all of the necessary elements of a preference exist pursuant to 11 U.S.C. § 547(b).

Torruella, Circuit Judge, concurred and filed opinion.

Judith Berkan, Santurce, P.R., for appellants.

H. Manuel Hernandez, San Juan, P.R., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., and Roberto Moreno, Asst. U.S. Atty., San Juan, P.R., were on brief, for U.S.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Hilton Fernandez Diamante (Fernandez) and Elias Samuel Castro Ramos (Castro) appeal from the denial of their motions in the United States District Court for the District of Puerto Rico challenging the manner in which the prosecutors have been conducting a federal grand jury investigation. The two substantive issues in this appeal are: (1) whether a letter sent to recipients of a grand jury subpoena *duces tecum* violated the provisions of Federal Rule of Criminal Procedure 6(e)(2) governing the limits of grand jury secrecy; and (2) whether the purpose of the grand jury investigation is the improper gathering of evidence for the prosecution of a case for which indictments have already issued in Connecticut, *United States v. Gerena,* Cr. Case No. 85–50 (TEC) (D.Conn.). In addition, there is the threshold issue of the standing of appellants to challenge the government's conduct of the Puerto Rico grand jury investigation.

## I. PROCEEDINGS BELOW

### A. *The Connecticut Criminal Case*

In *United States v. Gerena,* appellants were among a group of people indicted for their participation in a bank robbery in 1983 at a Wells Fargo depot in Hartford, Connecticut. The indictment charged, *inter alia,* that Fernandez and Castro aided in the transport of money and of another participant in the robbery to Mexico and Cuba.

Fernandez was arrested in Puerto Rico in August, 1985. After his arrest, he was removed to Connecticut where a bail hearing was held. During the hearing, the government argued that there was a risk that Fernandez would flee, in view of his previous travel history and his extensive international contacts. The magistrate's order, providing for detention without bail, was based on this risk of flight. The magistrate declared that the government had not presented sufficient evidence to justify the denial of bail on any danger to the community posed by Fernandez. Fernandez was found to be a member of the Macheteros, an organization alleged by the Connecticut indictment to be committed to achieving the independence of Puerto Rico by the use of force and to "the establishment of a Socialist-Communist form of government." The magistrate stated, however, that although "some evidence" had been presented connecting the defendant to the Connecticut robbery, its "weight" was "not conclusive." The risk of flight was the basis for the district court's affirmance of the magistrate's denial of bail.

### B. *The Puerto Rico Grand Jury Investigation*

According to the government, a federal grand jury in Puerto Rico has been inquiring, "for a number of years," into the activities of "clandestine Puerto Rican organizations." Government's Brief at 3. On November 18, 1985, the grand jury issued a subpoena *duces tecum* to Viajes Antillas, a Puerto Rico travel agency. The subpoena requested the travel agency to submit to the grand jury "any and all records pertaining to Hilton Fernandez Diamante."

The subpoena was accompanied by a letter from Roberto Moreno, Assistant United States Attorney for Puerto Rico, Special Prosecutions Unit. The letter's final paragraph read:

You are not to disclose the existence of this subpoena or the fact of your compliance for a period of 90 days from the

date of the subpoena. Any such disclosure could seriously impede the investigation being conducted and, thereby, interfere with the enforcement of the federal criminal law.

Appellants objected to the terms both of the subpoena and of the accompanying letter; they also raised more general claims concerning the grand jury investigation. The government contended that appellants had no standing to challenge a subpoena issued to a third party. It also claimed that the more general challenges to the investigation failed to overcome the presumption of regularity attaching to grand jury proceedings.

Appellants attacked the language of the subpoena by claiming that it was facially overbroad in violation of the fourth amendment. They claimed that documents "pertaining to" Fernandez could include materials concerning the travel of such individuals as Fernandez' attorneys, potential witnesses in the Connecticut case and other associates of Fernandez. The subpoena's request for all documents "pertaining to" Fernandez, appellants charged, could result in intimidation and interference with the preparation of the defense for the Connecticut trial. They argued that the breadth of the subpoena's request thereby exceeded the information necessary and proper for the investigation. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946).

Appellants claimed, in addition, that the letter accompanying the subpoena imposed an "obligation of secrecy" in violation of Federal Rule of Criminal Procedure 6(e)(2). The government has acknowledged, in the proceedings below and in oral argument before us, that sending such letters to recipients of subpoenas *duces tecum* is standard procedure in the District of Puerto Rico and elsewhere.[1] The government contended, however, that the letter did not impose any "obligation" but simply stated the United States Attorney's belief that disclosure would be harmful to the investigation.

Appellants also made the wider contention that the subpoena, when viewed in conjunction with other circumstances surrounding the investigation, indicated that the grand jury was being used for the improper purpose of gathering evidence for a criminal case in which indictments have already issued, *viz., United States v. Gerena.* They based their claim on several factors. First, they inferred a connection between the importance of the element of travel in the Connecticut indictment and bail hearing and the nature of the subpoena issued to Fernandez' travel agency in Puerto Rico. Second, they claimed that since the government was only able to present inconclusive evidence against Fernandez at the bail hearings it needed the Puerto Rico grand jury investigation to provide the missing information.[2] Third, they pointed to the fact that Roberto Moreno, the Assistant United States Attorney assigned to the Puerto Rico grand jury investigation, also participated in pretrial proceedings and in the preparation and submission of the affidavits used to obtain Title III wiretaps in connection with the Connecticut case.[3]

Finally, appellants argued that the district court should be particularly sensitive to their claims of prosecutorial misconduct because of its implications for Fernandez' right to travel and freedom of the press. Fernandez is an editorial board member of a political journal, *Pensamiento Critico* (Critical Thought). He contended that he travels extensively in Latin America as part of his work for the journal. Accord-

---

1. At oral argument, the government's attorney stated: "The government uses this letter all over the country. They're in our manuals and they're sent to banks and businesses.... There's nothing to hide about that, we do use them."

2. Appellant Fernandez' attorney, Judith Berkan, also stated in an affidavit that the United States Attorney's office in San Juan has continued its investigation of the *Gerena* case and has questioned various people, including Fernandez' wife.

3. At the hearing in Puerto Rico district court on the motion to intervene, Ms. Berkan also pointed to the presence in the courtroom of Jose Rodriguez, who, according to Ms. Berkan, was the government's "case agent ... whose testimony was critical in [the Hartford] proceedings."

ing to appellant, the premises of the journal were searched as part of the "massive operation" during which Fernandez and eleven other individuals were arrested. Affidavit of Appellant's Attorney, App. at 32. Appellants have not raised these constitutional claims on appeal.

The government contended that the prime purpose of the Puerto Rico grand jury was the investigation of crimes other than those named in the Connecticut indictment. In support of this claim, the government submitted a sealed affidavit which it identified as a "Certified Statement of a Special Agent of the Federal Bureau of Investigation."

The district court denied appellants' motions: (1) to quash the subpoena directed to Viajes Antillas; (2) to grant injunctive relief prohibiting the use of the letter containing the paragraph regarding nondisclosure; (3) to grant a protective order prohibiting the government from providing the information obtained from the subpoena to prosecutors in *United States v. Gerena;* (4) to grant a protective order requiring the government to inform any recipients of the letter accompanying the subpoenas that they were under no legal obligation of secrecy; and (5) to subpoena the foreperson of the grand jury or to allow the unsealing of the government's affidavit in order to help appellants contest the government's claim concerning the object of the grand jury's investigation. The district court did agree with appellants that the subpoena to Viajes Antillas was overbroad and ordered the subpoena restricted to documents pertaining to Fernandez' own travels and not to the travels of his friends, relatives, attorneys or witnesses.[4] *In re Grand Jury Subpoena,* 626 F.Supp. 1057 (D.P.R.1986).

On January 31, 1986, two weeks after the district court issued its decision, Viajes Antillas received a letter from Roberto Moreno requesting the submission of "documents subpoenaed by the Federal Grand Jury ... regarding Hilton Fernandez Diamante and Elias Castro Ramos." Viajes Antillas, which had previously declared its willingness to comply with the subpoena,

filed a motion in district court requesting a temporary stay. It based this request on the grounds that the new request relied on the authority of a subpoena that the court had found to be overbroad; it also objected to the request for documents concerning Castro since no subpoena concerning him had been issued. In its response to this motion, the government claimed that Viajes Antillas was engaged in "another dilatory tactic ... to again hinder the conduct of criminal investigations by the federal grand jury." Subsequently, a new subpoena was issued limited to Fernandez and phrased in accordance with the district court's decision.

Before proceeding to discuss the issues in this appeal, we must note that only appellant Fernandez has submitted briefs and has orally argued his case. In the proceedings below and in those before us, appellant Castro chose simply to adopt the arguments of Fernandez. Our review of the history of the case shows, however, that Fernandez and Castro are in quite different postures with regard to the claims presented. Only documents pertaining to Fernandez' travel were ultimately sought from the travel agency. The alleged connection between the Puerto Rico and the Connecticut proceedings was based in part on evidence relating to Fernandez' travel and foreign contacts and the importance of that evidence in Fernandez' Connecticut bail hearing. We have serious doubts as to Castro's standing in this appeal; we have not had the benefit of serious argument on this issue from either side. We, therefore, consider only Fernandez' claims. Our resolution of the substantive issues raised by Fernandez, however, effectively makes irrelevant our inability to treat Castro's claims. We refer to Fernandez alone as "appellant" throughout the remainder of this opinion.

## II. STANDING

■ The dispute between the government and appellant on the issue of standing grows out of two very different formula-

---

4. The government has not appealed this last ruling by the district court.

tions of the issues raised in this case. The government's argument that appellant lacks standing stresses the absence of a privileged relationship between appellant and the travel agency or of any protected interest of appellant in the travel agency's documents. This argument relies on the doctrine of standing in the context of fourth and fifth amendment claims. When those seeking to challenge a subpoena directed to a third party claim standing to raise a fourth or fifth amendment issue, they must establish either the existence of a privileged relationship or of a legitimate property or privacy interest in the documents possessed by the third party. *Compare, e.g., United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (bank depositor does not have standing to assert a fourth amendment claim to challenge subpoena issued to bank) *and United States v. Bank of Commerce*, 405 F.2d 931, 934 (3d Cir.1969) (bank depositor has no fifth amendment standing to object to subpoena of bank records) *with Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (individual allowed standing to assert fourth and fifth amendment claims in property previously delivered to the court) *and In re Katz*, 623 F.2d 122 (2d Cir.1980) (client has standing to challenge subpoena of attorney's records).

■ Appellant agrees with the government's statement of the requirements for standing in the fourth and fifth amendment context. He argues that the reason for those requirements must be related to the nature of the substantive claims. Fourth and fifth amendment claims are inherently personal and may not be asserted vicariously; absent a relationship of privilege or a property or privacy interest, therefore, there would be no fourth or fifth amendment claim on which to assert standing. Appellant argues, however, that his challenge to the subpoena and the grand jury investigation in this case presents quite different considerations from those in-

volved in a claim of an invasion of a protected personal sphere. He contends that the manner in which the prosecutors have been conducting the investigation constitutes an abuse of the grand jury process; his allegations concern the propriety both of the goal of the grand jury's activity and of the means used to achieve that goal. Fernandez' claim of standing is based on the harm to his interests as a defendant in a criminal trial and as a victim of a systematic abuse of the powers of the grand jury.

Appellant quotes extensively from the Third Circuit's decision in *In re Grand Jury (Schmidt)*, 619 F.2d 1022 (3d Cir. 1980). In *Schmidt*, an employer was given standing to challenge subpoenas issued to his employees. The court found that some property interest in the employees' labor time was implicated by the subpoenas; it stated the principle of its decision, however, in broader terms:

> Third party standing to assert claims of grand jury abuse cannot be determined by categorizing the claimed interest as one of property or privilege, but only by examining the nature of the abuse, and asking whether, and in what manner, it impinges upon the legitimate interests of the party allegedly abused.

*Id.* at 1027.

The Supreme Court has not directly addressed the issue of standing in this context; it has, however, implicitly assumed some limited version of the *Schmidt* principle in reaching the merits of another alleged abuse of the grand jury process. In *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), the Court decided a claim of a violation of Federal Rule of Criminal Procedure 6(e)(3), *viz.*, an allegation that the government sought improper disclosure of grand jury findings for their use in a civil suit. This Rule 6(e)(3) claim seems the reverse of appellant's Rule 6(e)(2) contention concerning an improper imposition of an obligation of secrecy [5]; but this difference does not

---

**5.** Federal Rule of Criminal Procedure 6(e)(2) states:

**(2) General Rule of Secrecy.** A grand juror, an interpreter, a stenographer, an opera-

tor of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of

affect the rationale for a grant of standing. Moreover, the claim of improper disclosure in *Sells Engineering* is similar to appellant's claim that the results of the grand jury investigation in Puerto Rico will be improperly used in the Connecticut trial. *See Gluck v. United States*, 771 F.2d 750, 755 n. 4 (3d Cir.1985) (citing *Sells Engineering* as supporting standing for "all persons potentially affected by the disclosure of grand jury materials"). *Cf. Reisman v. Caplin*, 375 U.S. 440, 449–50, 84 S.Ct. 508, 513–14, 11 L.Ed.2d 459 (1964) (taxpayer may challenge a § 7602 summons to a third party even when the third party seeks to comply voluntarily).

Other courts have reached the merits of motions challenging subpoenas issued to third parties, on grounds other than fourth or fifth amendment claims, in situations where a constitutionally recognized privacy or property interest was not present. *See In re Special 1977 Grand Jury*, 581 F.2d 589 (7th Cir.1978) (court ruled on merits of challenge by state attorney general to subpoenas served upon his staff), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978); *United States v. Finazzo*, 407 F.Supp. 1127, 1132 (E.D.Mich.1975) (court granted defendant's motion to enjoin temporarily subpoenas of defendant's records or of records "pertaining to [his] transactions").

The *Schmidt* principle has not, to be sure, been universally accepted. In *In re Subpoenas to Local 478, I.U.O.E. and Ben. Funds (Local 478)*, 708 F.2d 65, 73 (2d Cir.1983), the Second Circuit, treating the issues of standing and finality together, sharply criticized *Schmidt* as "lack[ing] a limiting principle." *Local 478*, however, "raise[d] no issue of abuse of grand jury process in the sense of the invalidity of the grand jury inquiry." *Id.* Rather, it involved an "amorphous assertion of standing," *id.* at 72, based on a claim of harassment lacking "concrete assertions." *Id.* at 73. By contrast, appellant in the case before us makes quite serious charges of government misconduct: an allegation of an ongoing and widespread violation of Federal Rule of Criminal Procedure 6(e)(2), a claim whose factual basis the government has freely acknowledged, as well as a charge, based on several specifically alleged circumstances, that a grand jury is being used for an improper purpose.

■ We find that these claims are sufficient to grant standing to appellant in accordance with our decision in *United States v. Doe*, 455 F.2d 1270 (1st Cir.1972). In *Doe*, a defendant in a criminal trial in California alleged that a grand jury in Massachusetts "had, as its sole or dominating purpose, preparation for trial of the California criminal prosecution." *Id.* at 1274. The "large and compendious" nature of this claim, *id.* at 1273, influenced our decision to take appellate jurisdiction on the issue of finality. We subsumed the issue of standing under that of finality and decided the case on the merits because of the nature of the "prejudice" the defendant would face if he lacked the opportunity to present his claim for review. *Id.* at 1274 n. 2.

In *Doe*, we implicitly distinguished between the standing requirements in cases of this nature and those involving claims of fourth or fifth amendment privilege. Neither in *Doe* nor in the present case, however, have we fully adopted the reasoning of the court in *Schmidt*. As a judge who partially dissented in that case stated, that opinion could be interpreted as "abolishing a standing requirement for intervenors in the grand jury context." *Schmidt*, 619 F.2d at 1032 (Rosenn, J., concurring and dissenting). Such an unlimited holding would have resulted here if we had granted standing on the ground of a vicarious assertion by appellant of a constitutional interest in particular documents belonging to the travel agency. We have based our grant of standing, however, on the scope and gravity of the specific claims in this case, and the factual grounds alleged to

---

this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules. *No obligation of secrecy may be imposed on any person except* *in accordance with this rule.* A knowing violation of Rule 6 may be punished as a contempt of court. [Emphasis added.]

support them. We view these claims as presenting allegations of grand jury abuse similar to the kind which the Supreme Court has declared that "were [they] called to the attention of the court, it would doubtless be alert to repress them." *Hale v. Henkel*, 201 U.S. 43, 65, 26 S.Ct. 370, 375, 50 L.Ed. 652 (1906).[6]

## III. THE LETTER

### A. *Mootness*

■ The letter sent to subpoena recipients contains a sentence stating that they "are not to disclose the existence of this subpoena or the fact of [their] compliance for a period of 90 days from the date of the subpoena." Since the letter was sent to Viajes Antillas in November, 1985, a question has been raised concerning the mootness of any attack on its propriety. We find that this issue is not moot under the test for actions "capable of repetition, yet evading review." In *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975), the Court stated that review is proper under this rubric if:

> (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

The ninety-day nondisclosure provision in the letter makes it quite unlikely that appellate review could take place within that period. Appellant may also reasonably expect to be affected by further subpoenas issued by this same grand jury. The government has informed us of the ongoing nature of the grand jury investigation into "clandestine organizations"; appellant Fernandez has been found by the Connecticut courts to be a member of one of those organizations. In addition, appellant may reasonably expect that any future subpoenas will be accompanied by similar letters since the government has acknowledged that the letters are sent as standard practice in the district of Puerto Rico as well as elsewhere.

There is a further consideration which impels us to view the dispute over the letter as a live controversy. Appellant has asked not only for injunctive and declaratory relief but also for remedial action, *viz.*, that we instruct the government to communicate with recipients of the letter and to explain to them that they are under no obligation of secrecy. This request could affect letter recipients who are currently within the ninety-day period from the date of the subpoena.

### B. *The Letter under Rule 6(e)(2)*

We conduct our evaluation of the propriety of the letter sent to subpoena recipients in two stages. First, we discuss whether Federal Rule of Criminal Procedure 6(e)(2) restricts the imposition of an obligation of secrecy on witnesses. Then, since we find that it does, we consider whether the letter did in fact impose such an obligation. Federal Rule of Criminal Procedure 6(e)(2) states:

> (2) **General Rule of Secrecy.** A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules. *No obligation of secrecy may be imposed on any person except in accordance with this rule.* A knowing violation of Rule 6 may be punished as a contempt of court. [Emphasis added.]

According to its plain terms, the rule would seem to exclude the imposition of an "obligation of secrecy" on anyone who is not among the specifically named individuals.

---

**6.** We note that the Fourth Circuit, in *In re Swearingen Aviation Corp.*, 605 F.2d 125 (4th Cir.1979), denied standing to a challenge by certain corporations to a secrecy obligation imposed on third parties who received grand jury subpoenas. That case presented a rather different factual background than the one before us. The movants had not been indicted, they had not objected to a systematic and widespread practice and there was no broader contention concerning grand jury abuse.

Witnesses, not mentioned in the rule, are discussed in the following note of the Advisory Committee:

> 2. *The rule does not impose any obligation of secrecy on witnesses.* The existing practice on this point varies among the districts. The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or an associate. [Emphasis added.]

The Supreme Court, too, has observed that witnesses are not bound by the secrecy obligation of the rule "unless they happen to fit into one of the enumerated classes." *Sells Engineering,* 463 U.S. at 425, 103 S.Ct. at 3138.

The question is whether the rule, in view of its interpretation by the Advisory Committee note and *Sells Engineering,* merely *does not include* witnesses among those bound by the secrecy obligation of the first sentence of the rule or whether it positively *exempts* witnesses from any such obligation as the rule's second sentence seems to imply. Several courts have taken the latter approach. *See, e.g., United States v. Radetsky,* 535 F.2d 556, 569 (10th Cir.1976), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976); *In re Langswanger,* 392 F.Supp. 783, 788 (N.D.Ill.1975); *In re Russo,* 53 F.R.D. 564, 570 (C.D.Cal.1971). At least one court sharply condemned prosecutors for violating the rule in this manner. *United States v. Kilpatrick,* 575 F.Supp. 325, 331–32 (D.Colo.1983) (secrecy obligation "foolishness" and "misconduct" on the part of prosecutor for whom "ignorance of the law is no defense").

Other courts have left open the possibility that a court could, under the appropriate circumstances, impose secrecy on a grand jury witness. Thus, the Eighth Circuit would require a demonstration of "compelling necessity ... shown with particularity" before a court could issue such an order. *In re Grand Jury Subpoena Duces Tecum,* 797 F.2d 676, 681 (8th Cir.1986).

The "compelling necessity" standard, which the court found had not been met in the case before it, was drawn from the test set by the Supreme Court in *United States v. Procter and Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), for a Rule 6(e)(3) disclosure of grand jury materials. *See also In re Grand Jury Subpoena Duces Tecum,* 575 F.Supp. 93, 94 (S.D.N.Y.1983) (government did not meet its own suggested standard of "particularized showing of need for secrecy"); *Beacon Journal Publishing Co. v. Unger,* 532 F.Supp. 55, 59 (N.D.Ohio 1982) (secrecy obligation should be "case-specific and based upon the facts and circumstances of each situation as it arises"). *Cf. In re Swearingen Aviation Corp.,* 486 F.Supp. 9 (D.Md.1979) (upheld secrecy order; secrecy appropriate where necessary to protect the "integrity of the judicial process"), *modified* 605 F.2d 125 (4th Cir.1979).[7]

Our review of the cases shows that while some courts interpret Rule 6(e)(2) as an absolute bar to witness secrecy, others declare that such an obligation might be imposed in exceptional cases. Those courts that have found such an exception to the rule's seemingly unequivocal language would allow a secrecy obligation on witnesses when: (a) the obligation was imposed by a court; and (b) the court had imposed the obligation after an appropriate showing by the government. The requirements for such a showing have been formulated in quite stringent terms.

The case before us does not demand that we choose between these alternative interpretations of the rule. The government here has not sought a secrecy order from the court and it has not made a showing of why secrecy would be required in these particular circumstances. There has been no showing that could, for example, satisfy the Eight Circuit's test of "compelling necessity ... shown with particularity." Accordingly, we find that an obligation of secrecy on witnesses was forbidden in these circumstances under all interpreta-

---

7. The Fourth Circuit, the only Court of Appeals actually to have upheld such a secrecy order, *see In re Swearingen Aviation Corp.,* 605 F.2d 125 (4th Cir.1979), did so on the issue of standing, as we have discussed above, *supra* at n. 6.

tions of the rule. We turn, therefore, to a consideration of whether the letter at issue does in fact impose such an obligation.

The district court, in upholding the letter, closely followed the reasoning of the court in *In re Vescovo*, 473 F.Supp. 1335 (C.D. Cal.1979). We note that the *Vescovo* court agreed with those who interpret Rule 6(e)(2) as an absolute bar to witness secrecy obligations. *Id.* at 1336. The court upheld, however, a government letter requesting nondisclosure. It stated that because such a letter

> may ... be interpreted as an informal request that the [recipient] exercise any discretion it may have not to disclose the subpoena[, it] does not request the [recipient] to do or not to do anything. It merely informs the [recipient] that the government believes its investigation would be hindered by disclosure of the subpoena.

*Id.* at 1336–37.

The *Vescovo* court did not quote the actual text of the letter but its paraphrase leads us to believe that the letter was at least similar to the one challenged here. Assuming the substantial similarity of the letters, we cannot follow the logic of the *Vescovo* court's opinion. The document at issue, after all, is from the United States Attorney's office informing its recipient that a particular course of action could "impede" a criminal investigation "and, thereby, interfere with the enforcement of the federal criminal law." Absent a clear showing to the contrary, we fail to see how a reasonable, law-abiding person who received such a letter would think anything other than that he was being told that he was legally obligated not to engage in that course of action.

We note, in addition, that the letter, in stating that disclosure could "impede" an investigation and "interfere" with the enforcement of the law, closely resembles the language of 18 U.S.C. § 1503 (1982) which makes it a crime to "influence, obstruct, or impede the due administration of justice." In *United States v. Howard*, 569 F.2d 1331 (5th Cir.1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978), it was specifically held that section 1503 applied to individuals who had impermissibly attempted to violate the secrecy of grand jury materials. Indeed, the government's attorney in *Vescovo* had actually told the attorneys for the recipient of the letter that disclosure could constitute a violation of 18 U.S.C. § 1503 or § 1510. *Vescovo*, 473 F.Supp. at 1335–36. There was no actual threat of prosecution here. Yet we cannot accept that a letter from an Assistant United States Attorney, Special Prosecutions Unit, is to be viewed as merely appealing to an individual's "discretion" when it portrays an action in terms substantially identical to those used to describe a very serious federal crime.

█ We find that the government's practice of sending out the letter to all recipients of subpoenas *duces tecum* violates Federal Rule of Criminal Procedure 6(e)(2). Since the letter imposes an impermissible burden on its recipients, we order the government to communicate with anyone who has received this letter as part of the Puerto Rico grand jury's investigation of Fernandez and Castro and is still within the ninety-day period from the date of the subpoena and inform any such person that he or she is under no legal obligation to keep secret the subpoena or the fact of his or her compliance with it. The government is free to express its beliefs about the impact of any disclosure, provided it makes clear that the law does not require nondisclosure.

## IV. THE PURPOSE OF THE GRAND JURY INVESTIGATION

█ It is well established that a grand jury may not conduct an investigation for the primary purpose of helping the prosecution prepare indictments for trial. *See, e.g., United States v. Doe*, 455 F.2d at 1273. The prosecutor at a trial, however, may use evidence incidentally gained from a grand jury primarily investigating other crimes. *See, e.g., In re Grand Jury Proceedings* 632 F.2d 1033 (3d Cir.1980); *United States v. Doe*, 455 F.2d at 1273. Many authorities have recognized the difficulties involved in enforcing this rule. *See, e.g.,*

*In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels),* 767 F.2d 26, 30 (2d Cir.1985); *United States v. Doe* 455 F.2d at 1273; 8 Moore's Federal Practice § 6.04[5] at 6–86–87 (2d ed. 1986).

■ The difficult problems posed by the rule derive from public policies in the grand jury context which sometimes stand in tension with one another. On the one hand, grand jury proceedings are granted a presumption of regularity. *See, e.g., United States v. Johnson,* 319 U.S. 503, 512–13, 63 S.Ct. 1233, 1237–38, 87 L.Ed. 1546 (1943). The grand jury is, in principle, an independent body, and its proceedings "may not be policed in any detail." *United States v. Doe* at 1274. On the other hand, the possibility of the kind of prosecutorial abuse alleged in this case stems precisely from the broad leeway granted to the grand jury. In the presumptively independent grand jury, " 'the government has at its disposal the most effective discovery mechanism yet devised.' " *United States v. Doe* at 1275 (quoting 8 Moore's Federal Practice § 16.08[1] at 16–100 (2d ed. 1970)). Despite these difficulties, neither we nor other courts have shirked the responsibility of deciding the merits of challenges to grand jury proceedings like the one raised here.

No court, to our knowledge, has established a general test to guide such inquiries. Rather, courts have looked at the circumstances of particular cases in deciding the kind of showing that they would require either from the party challenging the grand jury or from the government. This does not mean that such an inquiry is purely a matter of factual determination concerning the *intent* of the prosecutors conducting the grand jury investigation, and thus subject to a "clearly erroneous" standard on review. Although a district court's finding must, of course, be accorded considerable respect and deference,

> [t]he question of a grand jury's dominant purpose is not the typical question of historical fact nor even the typical inquiry as to the state of mind of a witness or a party. It is the application of a legal standard designed to ensure that the grand jury, a body operating pecu-

liarly under court supervision [cites omitted], is not misused by the prosecutor for trial preparation.

*Simels,* 767 F.2d 26, 29.

The kinds of showings courts have required and the remedies they have considered vary greatly. In *In re Pantojas,* 628 F.2d 701 (1st Cir.1980), cited by the district court in this case, 626 F.Supp. at 1060 n. 6, a target of a grand jury investigation claimed that the grand jury was being used to collect evidence for use at trial. We rejected the claim and refused to require any special preliminary showing by the government. In *Pantojas,* however, the allegation was quite unsubstantiated, particularly since the individual making the allegation had not yet even been indicted. *See id.* at 704.

On the other side of the spectrum, a Michigan district court imposed a heavy burden on the prosecution to prove that its primary purpose in a grand jury investigation was not preparation for trial. *See United States v. Kovaleski,* 406 F.Supp. 267 (E.D.Mich.1976). Such a showing would have had to have been something more than even a full review of the grand jury transcript. The prosecution failed to make such a showing and the court prohibited a grand jury witness from testifying at the upcoming trial. *See id.* at 270–71. *Cf. United States v. Finazzo,* 407 F.Supp. at 1132 (court ordered government to furnish detailed *in camera* affidavit *and* an offer of proof so that court could determine what grand jury transcripts it would examine).

The claims and remedies we considered in *United States v. Doe,* 455 F.2d 1270, fall between these two extremes. In *Doe,* the defendant based his claim that a grand jury was gathering evidence for an upcoming trial on three circumstances: a "broadly-phrased indictment in California, ... a grand jury inquiry on the home ground of the movant [and] an identity of prosecutors in the two proceedings." *Id.* at 1275. The government had represented to the court that the Massachusetts grand jury was investigating other than the California crimes. We declined, on the basis of this evidence, to impose any remedy which

would have opened up the grand jury proceedings to the movant on such "generalized suspicion." We thus refused to require an affidavit in open court or to impose judicial review of questions posed to grand jury witnesses. Rather, we granted the limited remedy of ordering the transcripts of the Massachusetts grand jury made available to the California trial court and suggested several ways in which that court could make use of those transcripts *if it saw fit. See id.* at 1276. We saw this remedy as consistent with our respect for the grand jury; we were also careful to avoid any suggestion of malevolent intent on the part of the prosecution. Rather, we found that given the circumstances of the case, "[t]he difficulties [the prosecutors] face[d] in not confusing their roles, with the consequent potential for distortion of the role of the grand jury, cannot be dismissed as unreal." *Id.* at 1275.

Appellant argues that a similar potential for confusion and consequent distortion of roles exists here. The government has informed us of the continuing nature of its investigations, including that of the grand jury, into the activities of certain organizations. The defendants in the 1980 *Pantojas* case, we were told at oral argument, involved the "same individuals" as in the case before us. Appellant has set forth several circumstances, including the importance of travel in the Connecticut indictment and bail hearing, to show that such overlap could possibly result in the improper mixing of the investigations. The indictment involved the transport of money and of an individual, Victor Gerena, to Mexico and Cuba. The bail hearing stressed Fernandez' international contacts; the government had a witness read a document found at Fernandez' home which contained a list of "points of contact" in Mexico, Panama, Cuba, Puerto Rico, Nicaragua and New York. In addition, appellant has alleged the involvement of the Puerto Rico United States Attorney's office in both cases and the involvement of Roberto Moreno, prosecutor in the current grand jury investigation, in pretrial proceedings and in the securing of authorization for wiretaps for the Connecticut case.[8] We have read the sealed affidavit the government has submitted to show that it is investigating crimes other than the robbery in Connecticut. The grand jury transcripts have not been offered for our examination.

Appellant has not had the opportunity to contest the sealed affidavit. We do not think that any such disclosure or the holding of a "minitrial" on appellant's claims would be appropriate. We do note, however, that such sealed affidavits are only relied upon in certain circumstances. As the court stated in *In re Taylor*, 567 F.2d 1183, 1188–89 (2d Cir.1977), "[i]n camera proceedings are extraordinary events"; the presumption is against such proceedings when "rights of individuals are to be adjudicated." We need not enter into a lengthy discussion of the particular need for secrecy concerning the goal of the current grand jury investigation; nor need we consider what precise weight to accord a statement of a Special Agent of the Federal Bureau of Investigation concerning the activities of a federal grand jury. We think that a decision based solely on such a statement would have certain problematic implications here. Part of the government's argument in this case focused on the independence of the grand jury from the government's general prosecutorial strategies. Yet the government asks us to rely on an FBI agent's unchallenged testimony to prove that the grand jury is acting independently of the Justice Department. *See In re Grand Jury Subpoena (Legal Services Center)*, 615 F.Supp. 958, 967 (D.Mass. 1985) (sealed affidavit not relied on when it was product of investigation of I.N.S. inspector, not of grand jury). *Cf. In re Grand Jury Proceedings*, 722 F.2d 303, 309 (6th Cir.1983) (sealed affidavit accepted containing evidence gathered by grand jury

---

8. In its Brief, the government stated that "whatever investigation a Grand Jury in the District of Connecticut conducted ... had ... no participation from Roberto Moreno." Government's Brief at 13. It is not clear whether the government intends thereby to deny the specific claims made by appellant concerning Moreno's involvement in all aspects of the *Puerto Rico* side of the investigation of the Connecticut case.

such as testimony of other witnesses), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *In re John Doe Corp.,* 675 F.2d 482, 490 (2d Cir.1982) (upheld use of *in camera* submission after balancing interest in grand jury secrecy against movant's claim of privilege).

■ This case presents a close question under *Doe.* On balance, however, we decline to impose the *Doe* remedy here. The district judge in this case was intimately involved with various aspects of the investigations under challenge here. We assume that his decision was based on the knowledge of the total context of this case and not merely in reliance on one *ex parte* affidavit. We will, therefore, defer to his judgment that appellant is not entitled to a *Doe* -like remedy at this stage.

Of course, if the Connecticut district court should at some future time wish to make its own *in camera* examination of the transcript of the questioning of overlapping witnesses or of the presentation of overlapping subpoena material before the Puerto Rico grand jury, we will expect the district court of Puerto Rico to order that these be made available.

*Affirmed in part, reversed in part, remanded.*

TORRUELLA, Circuit Judge (concurring).

I concur in the judgment of the court and in parts I—III of the majority opinion. I write separately to express my view that the ex parte affidavit, alone, provides adequate support for the district court's refusal to quash the subpoena. We have not hesitated to rely on such affidavits in other circumstances where the government has demonstrated the importance of maintaining secrecy. *See, e.g., Application of Kingsley,* 802 F.2d 571, 577 (1st Cir.1986). The affidavit provides ample basis for the district court's determination that "[t]he grand jury seeks the documents in connection with *another investigation* involving *other charges* of crimes allegedly committed in this district." *In re Grand Jury Subpoena,* 626 F.Supp. 1057, 1060 (D.P.R. 1986) (emphasis supplied). As long as the grand jury is investigating a separate crime I do not understand why the independence or lack of independence of the grand jury from "the government's general prosecutorial strategies," *ante* at 72, would be material. Similarly, I am not troubled that the affidavit is from an FBI agent. His detailed factual allegations justify a grand jury investigation into the travels of Fernández Diamante.