FOURTH DIVISION
 September 5, 1996





No. 1-93-0694

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County
 )
 v. ) 
 ) Honorable
 ) Mary Maxell Thomas
DONNIE ADAMS, ) Judge Presiding.
 )
 Defendant-Appellant. )

 JUSTICE O'BRIEN delivered the opinion of the court:
 Following a jury trial, defendant, Donnie Adams, was found
guilty of the first-degree murder of Tony Johnson and sentenced to
40 years in prison. On appeal, defendant argues: (1) the trial
court erred by refusing to allow witness Marvin Winters to invoke
his fifth amendment right against self-incrimination; (2) the trial
court erred by refusing to hold a hearing to determine whether
Winters' prior inconsistent statements were voluntarily given; (3)
the trial court erred by admitting Winters' prior inconsistent
statements as substantive evidence; (4) defendant was denied a fair
trial when the State failed to complete impeachment of him; and (5)
the "cumulative impact" of the above-stated errors denied him a
fair trial. We affirm.
 Marvin Winters testified before the grand jury on January 14,
1992, that he saw defendant shoot Tony Johnson. On September 14,
1992, Winters' counsel informed the trial judge that Winters' grand
jury testimony was false. Further, Winters wished to invoke his
fifth amendment right against self-incrimination during defendant's
upcoming trial, because he feared if he testified truthfully that
he did not see defendant shoot Johnson, the State would bring
perjury charges against him. The State contended Winters could not
invoke the fifth amendment right against self-incrimination at
defendant's trial, because his testimony would not implicate him in
the crime for which defendant was being prosecuted. The trial
judge also expressed concern about setting a precedent whereby
"anyone who testified before the grand jury who later had second
thoughts" could assert the fifth amendment at trial. Accordingly,
the trial judge ruled that Winters could not invoke the fifth
amendment.
 At trial, Felicia Spivey testified that at about 1:40 p.m. on
January 10, 1992, she and Tony Johnson were walking in the 1300
block of North Laramie. She saw defendant come out of a gangway
and start to quickly walk toward them. Spivey noticed that
defendant "had a look on his face like he hated [Johnson]" and she
told Johnson to look at the "strange person" coming toward them. 
 Spivey testified defendant pulled his hat down to his
eyebrows, walked close to Johnson, and said "Remember me?" Johnson
did not respond, and then defendant pulled a gun out of his pants
and fired four or five shots at Johnson. 
 Spivey testified Johnson fell on top of her, and they rolled
off the sidewalk onto the street. Spivey was then taken to Mt.
Sinai Hospital. On January 13, Spivey viewed a lineup and
identified defendant.
 The State called Marvin Winters, who reiterated his request to
plead the fifth amendment. Outside the presence of the jury, the
trial judge informed Winters that she had already determined he had
no fifth amendment privilege in this case, and she directed him to
answer the questions posed to him at trial. Defense counsel 
informed the judge that if the State attempted to impeach Winters
with his prior statements, the defense would like a sidebar hearing
to determine whether those statements were voluntary. The judge
ruled such a hearing would not be proper because the circumstances
surrounding Winters' prior statements could come out on cross-
examination.
 Winters then testified before the jury that he was on the 1300
block of North Laramie at the time Johnson was shot, but he denied
seeing defendant there. The State impeached Winters with his
statement to Assistant State's Attorney Noonan on July 13, 1992,
and his testimony before the grand jury on January 14, 1992, in
which Winters admitted to seeing defendant shoot Johnson at about
1:50 p.m. on January 10, 1992.
 On cross-examination, Winters stated that on January 12, 1992,
a group of armed men beat him and told him to tell the police that
defendant was the person who shot Johnson. Defense counsel asked
Winters whether he had seen who shot Johnson, and Winters replied
he had "seen the person from behind, *** [and] assumed it was
[defendant]." Defense counsel then asked Winters, "That wasn't
[defendant] out there shooting, was it?" Winters replied that from
his "view," he knew defendant was the shooter.
 After the State rested, defendant took the stand and testified
he was at Laramie and Crystal at about noon on January 10, 1992,
and he saw Johnson crossing the street. However, defendant denied
shooting Johnson. On cross-examination, defendant testified he
went home at 1 p.m. on January 10 and stayed there until 3 p.m. He
then went to the home of his uncle, MC Winters' and stayed there
until 4:30. Defendant denied calling Marvin Winters on January 10
and stating he was going to say he was with MC at the time of the
shooting. Defendant also denied asking MC to be an alibi witness
for him.
 The jury found defendant guilty of first-degree murder, and
the trial court sentenced him to 40 years in prison. Defendant
filed this timely appeal.
 First, defendant argues the trial court erred when it refused
to allow Marvin Winters to invoke his fifth amendment right against
self-incrimination based on his belief that, if he testified at
trial, the State would bring perjury charges against him. 
Defendant contends he was prejudiced thereby, because if the trial
court had allowed Winters to assert the fifth amendment, the jury
would not have heard Winters' prior statements that he saw
defendant shoot Johnson. 
 The State responds that defendant does not have standing to
raise this issue. We agree. It is well established that the 
constitutional privilege against self-incrimination is a personal
privilege belonging only to the person testifying (see People v.
Homes, 274 Ill. App. 3d 612, 619 (1995); Couch v. United States,
409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611 (1973); People v.
Shockey, 67 Ill. App. 2d 133, 139 (1966)), even where that person's
testimony also incriminates defendant. United States ex rel.
Falconer v. Pate, 319 F. Supp. 206 (N.D. Ill. 1970), aff'd, 478 
F.2d 1405 (7th Cir. 1973); United States v. Bruton, 416 F.2d 310
(8th Cir. 1969). The personal nature of the fifth amendment
privilege precludes defendant from claiming any error based on the
trial court's refusal to allow Winters to assert the privilege at
trial. 
 Defendant contends, though, he has standing pursuant to In re
Grand Jury Proceedings, 814 F.2d 61 (1st Cir. 1987). We disagree. 
There, the United States Court of Appeals for the First Circuit
held that defendant had standing to challenge (a) whether a letter
sent to recipients of a grand jury subpoena duces tecum violated
provisions of Federal Rule of Criminal Procedure 6(e)(2), which
govern the limits of grand jury secrecy; and (b) whether the
purpose of the grand jury investigation was to improperly collect
evidence for use in another case in which defendant had already
been indicted. The court distinguished between the standing
requirements of cases of that nature, in which the allegations of
grand jury abuse gave defendant standing, and those involving
claims of fifth amendment privilege, which are inherently personal
and may not be asserted vicariously. In re Grand Jury Proceedings,
814 F.2d at 67. The present case involves a claim of fifth
amendment privilege, not grand jury abuse, and, therefore, In re
Grand Jury Proceedings is not applicable.
 Second, defendant argues the trial court erred when it allowed
Winters' prior inconsistent statements to be substantively admitted
under section 115-10.1 of the Code of Criminal Procedure of 1963
(725 ILCS 5/115 10.1 (West 1992))without first holding a hearing to
determine whether those statements were voluntarily given. In
support, defendant cites People v. Johnson, 255 Ill. App. 3d 547,
559 (1993), which held that before a prior inconsistent statement
is admissible as substantive evidence, the trial court must find
there is a sufficient evidentiary basis from which a jury could
find that the declarant's prior statements were knowing and
voluntary. The State does not dispute that Winters' prior
inconsistent statements were substantively admitted, but it argues
the trial court committed no error in refusing to hold a hearing to
determine whether those statements were voluntarily given. 
 The record before us, however, indicates Winters' prior
inconsistent statements were admitted for impeachment purposes
only, not as substantive evidence. We base this conclusion on the
following factors: (a) when the State questioned Winters about his
prior inconsistent statements, it did not ask that the statements
be admitted as substantive evidence; (b) during closing argument,
when defense counsel quoted Winters' prior inconsistent statement,
the State objected on the grounds that the prior statement "wasn't
admitted into evidence *** . It was used for impeachment purposes";
and (c) without objection, the trial court gave the following
version of Illinois Pattern Jury Instructions, Criminal, No. 3.11
(2d ed. 1981):
 "The believability of a witness may be
 challenged by evidence that on some former occasion
 he made a statement that was not consistent with
 his testimony in this case.
 Evidence of this kind may be considered by you
 only for the purpose of deciding the weight to be
 given the testimony you heard from the witness in
 this courtroom."
 Having determined Winters' prior inconsistent statements were
admitted for impeachment purposes only, we need not address
defendant's argument that before admitting a prior inconsistent
statement as substantive evidence, the trial court must find the
statement was knowing and voluntary.
 Defendant contends, though, that even if the statements were
admitted for impeachment purposes only, there is no case law
holding that the trial court could not hold a hearing to determine
whether those statements were voluntarily given. Therefore,
defendant argues the trial court erred when it determined as a
matter of law that it lacked the discretion to hold such a hearing.
 However, we find no indication in the record that the trial
judge denied defendant's request for a hearing on the voluntariness
of Winters' prior statements because she believed she lacked the
discretion to hold such a hearing. When denying defendant's
request for a hearing, the trial court stated, "He's not the
defendant. As far as whether they are voluntary, he's a witness. 
As to having a hearing, I don't think that's proper. That's where
if you had that information, that can come out in cross
examination. That's the whole purpose of cross-examination, to
challenge the veracity of the witness."
 Thus, the trial court denied the hearing because it felt
defense counsel could raise at trial the issue of the voluntariness
of Winters' prior statements. We find no abuse of discretion by
the trial court.
 Third, defendant argues the trial court erred when it admitted
Winters' prior inconsistent statements as substantive evidence. As
discussed above, those statements were admitted for impeachment
purposes only.
 Fourth, defendant argues the State cross-examined him
concerning statements he allegedly made about using his uncle MC as
an alibi, but failed to present appropriate rebuttal testimony
after he denied making those statements. Defendant contends it was
error for the State to ask him questions presuming facts not in
evidence as a precursor to impeachment, unless the State had
evidence to substantiate the inquiry. In support, defendant cites
People v. Nuccio, 43 Ill. 2d 375 (1969). There, the trial court
found Nuccio, a police officer, guilty of murdering a 19-year-old
man near Franksville. The supreme court reversed and remanded for
a new trial after quoting at length nine pages of "cross-
examination by which the State repeatedly insinuated, generally
without any supporting testimony, that defendant and his witnesses
had engaged in a pattern of reprehensible conduct in their
relationships to the youths who frequented Franksville." Nuccio,
43 Ill. 2d at 381. The supreme court held 
 "Where *** the guilt of the accused is not
 manifest, but is dependent upon the degree of
 credibility accorded by the trier of fact to his
 testimony and that of the witnesses who testify on
 his behalf, and there appear in the record
 substantial numbers of unsupported insinuations
 which, if considered, could have seriously
 impeached the credibility of the defendant and his
 witnesses, *** it is our opinion that justice and
 fundamental fairness demand that the defendant be
 afforded a new trial free from such prejudicial
 misconduct." Nuccio, 43 Ill. 2d at 396.
 Cases subsequent to Nuccio have also held that the incomplete
impeachment of a witness is reversible error only when the
unfounded insinuation is substantial, repeated, and definitely
prejudicial. People v. Amos, 204 Ill. App. 3d 75, 82 (1990). 
 The complained-of cross-examination here is as follows:
 "Q. Did you call Marvin Winters on the afternoon of
 January 10, 1992, and tell him I got an alibi. I'm going
 to say I was with my uncle MC. Did you make that
 conversation to Marvin Winters?
 A. No.
 Q. You never did?
 A. No.
 Q. Did you call Marvin Winters on the night of
 January 10th?
 A. No.
 Q. Did you call Marvin Winters and ask him if
 Tony was dead?
 A. No.
 Q. And you didn't call him and tell him you're
 going to use your uncle as an alibi either; right?
 A. No.
* * *
 
 Q. Did you ever ask MC if he would be an alibi
 witness for you?
 A. No.
 Q. You didn't?
 A. No."
 Such cross-examination does not approach the nine pages quoted
at length in Nuccio, which were found to be "substantial." See
Nuccio, 43 Ill. 2d at 384-92. Further, given the testimony of
Felicia Spivey identifying defendant, and the testimony of Marvin
Winters, in which he first denied seeing defendant at the time
Johnson was shot, but later admitted he knew defendant was the
shooter, we cannot say the outcome of the trial would have been
different had the cross-examination not occurred. Accordingly, we
find no reversible error.
 Finally, defendant argues the "cumulative impact" of the trial
errors denied him a fair trial. We disagree. Defendant is
rearguing the same alleged errors that we have already found do not
necessitate a new trial.
 For the foregoing reasons, we affirm the trial court. As part
of our judgment, we grant the State's request and assess defendant
$150 as costs for this appeal.
 Affirmed.
 CAHILL, J., and THEIS, J., concur.